## BETTY EASTMAN v. THE LEISER COMPANY AND OTHERS.[1]

January 21, 1921.

No. 21,861.

**Malicious prosecution — evidence.**

1. One who sets the machinery of the criminal law in motion, causes the "prosecution," as that term is used in the law of malicious prosecution. The evidence is sufficient to show that defendant Leiser Company's employees caused the prosecution of plaintiff.

**Same — defendant company liable for acts of its manager.**

2. The evidence sufficiently shows that under rules stated in Smith v. Munch, 65 Minn. 256, defendant company was liable for the acts of its manager in charge of its store.

**Same.**

3. Where another employee acts under authority of a manager who has authority in the premises, the company is liable for the acts of both.

**Malice — probable cause — province of jury and of court — review of evidence on appeal.**

4. The burden is on plaintiff to prove malice and want of probable

[1]Reported in 181 N. W. 109.

cause. On the subject of probable cause it is for the jury to determine what facts exist and for the court to determine the inferences to be drawn from the facts, and whether given facts establish want of probable cause. On appeal the court will consider and weigh the evidence bearing on probable cause as if presented there, in order to determine the correctness of the determination below.

**Want of probable cause.**

5. The evidence in this case is such as to sustain the jury's finding of want of probable cause.

**Malice.**

6. The evidence is sufficient to sustain the jury's finding of malice.

Action in the district court for St. Louis county to recover $10,760 for malicious prosecution. The case was tried before Cant, J., who at the close of the testimony granted the motion of defendant Blumenthal to direct a verdict in his favor and denied a similar motion of the other defendants, and a jury which returned a verdict against The Leiser Company and Marie Balfany for $7,737.25. The motion of defendant The Leiser Company for judgment notwithstanding the verdict was granted, and judgment on the merits in favor of that defendant ordered. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*Andrew Nelson, John Cedergren* and *Albert Schaller,* for appellant.

*Baldwin, Baldwin, Holmes & Mayall* and *Benjamin M. Goldberg,* for respondent.

HALLAM, J.

Action to recover damages for malicious prosecution. The court directed a verdict in favor of the defendant Blumenthal. The jury returned a verdict against the other defendants for $7,737.25. The court granted a new trial to defendant Marie Balfany, and, on motion in the alternative for judgment or for a new trial, gave judgment for the defendant Leiser Company notwithstanding the verdict. From this judgment plaintiff appeals.

Defendant Leiser Company operates a ladies' garment store in Duluth. In 1917 defendant Blumenthal was its manager, defendant Marie

148 M.—7.

Balfany, a saleslady. On November 22, 1917, a young woman called at the store and purchased a dress of defendant Marie Balfany for $12.50. In payment, she gave a $20 check, payable to Esther Holmgren and purporting to be signed by E. P. Alexander, a business man of Duluth, and she was given the dress and $7.50 in change. On Monday, November 26, it was discovered that the check was a forgery. Defendant Blumenthal took the matter up with defendant Marie Balfany. Mrs. Balfany said she remembered the purchaser and could identify her. Blumenthal then told her she had probably better take the check to police headquarters. She did so, gave such information as she had and reported back to Blumenthal. Some time before this, a forged check bearing the name of E. P. Alexander, payable to Esther Holmgren, had been passed at Gray's store in Duluth. Plaintiff had at one time been a domestic servant in the Alexander home, and she was investigated and sent for by the police, but the saleslady at Gray's store, who had taken the check, would not identify her as the guilty person and she was released. The police, remembering this circumstance, directed their attention to plaintiff again and asked Mrs. Balfany to accompany them to see her. Mrs. Balfany went, with the consent of Blumenthal, and, on the time of the Leiser Company. They found plaintiff, employed as a domestic, in the family of John Wickstrom. On seeing plaintiff, Mrs. Balfany says she identified plaintiff positively as the girl who passed the check, though plaintiff testified she said she said she was not sure. On her identification, the police arrested plaintiff and took her to the police station and imprisoned her there. Mrs. Balfany reported back to Blumenthal that she had identified plaintiff and that she had been arrested. While at the Wickstrom house, Mrs. Balfany, with the detectives, searched plaintiff's room, coaxed her to come along with the detectives, went to the police station to see her the same evening, and, among other things, asked her what was her object in forging that check. Next day she went with detectives to the home of plaintiff's married sister and searched plaintiff's trunk, which was found there, for the dress, but neither there nor at the Wickstrom's did she find the dress or any incriminatory evidence.

Defendant Leiser Company is an Illinois corporation. Defendant

Blumenthal was in charge of the Duluth store. No officer of the company was located there and no employee above Blumenthal. He had charge of all the employees there and of the business of the store. He testified that it was his duty to look after the merchandise in the store and see that it was protected; that, if any of it was stolen or removed by fraud, or if any one should come into the store and pass a forged check and obtain goods thereby, it was one of his duties and part of his business to see that the guilty person was apprehended and punished; that he made no report of such things to Chicago, but such matters were left to his judgment. He afterwards denied this testimony and said it was his duty in such cases to consult the company's attorney in Duluth and to "consult them in Chicago," but he admitted that he did not consult any attorney in this case and that this case had never been reported to Chicago.

The day after plaintiff's arrest, the chief of detectives called Blumenthal. Blumenthal asked what the police proposed to do. The chief told him it was "up to him if he wanted to make a complaint" and sent him to the county attorney. Blumenthal went, and the county attorney, after conference with him and the police officer, prepared a complaint. Blumenthal signed the complaint, procured the warrant and took it to the police station. While there he accompanied a detective to see plaintiff in the jail. The detective took plaintiff in hand, told her "sternly and vigorously" that she was guilty, or that he believed she was, and that she had better admit it. Blumenthal was present during this interview. Plaintiff testified that, during the course of it, Blumenthal said he saw plaintiff in the store buying the dress. Blumenthal denied this. Blumenthal was in court at the time of plaintiff's arraignment and also through the whole of the preliminary examination, though he was not a witness. On one occasion during the pendency of the case, Mrs. Balfany testified she went to Blumenthal and told him she did not want to testify against a working girl and that she was going to see the police, and that Blumenthal told her if she "could get out of it he would drop the thing."

Plaintiff was tried and acquitted. Thereafter, in April, 1918, the real forger of the Alexander check called at the Leiser store and at-

tempted to pass another forged check. Blumenthal called the police and testified that, in so doing, he acted "within the scope of his employment." On another occasion he "prosecuted" a man for taking things from the store, this time after consulting Chicago and also the company's local attorney.

We have no trouble in holding that defendant Blumenthal, in conjunction with defendant Marie Balfany, "prosecuted" plaintiff, as that term is used in the law of malicious prosecution. They set the machinery of the criminal law in motion. That constitutes prosecution. Potter v. Gjertsen, 37 Minn. 386, 34 N. W. 746; Smith v. Munch, 65 Minn. 256, 259, 68 N. W. 19; 26 Cyc. 18.

2. Nor have we any difficulty in holding that the Leiser Company was responsible for the acts of Blumenthal. Smith v. Munch, supra, is decisive of this. The rule, laid down there, and often repeated since, is, that an employer is responsible for the torts of his employee done with a view to the furtherance of the employer's business, whether the same be done negligently or wilfully, but within the scope of his agency. The fact that the employee may have exceeded his authority, does not alter the rule. In later cases it has, in other words, been said the employer is liable if the act is committed in the course and within the scope of the agency, or, as sometimes expressed, with a view to the furtherance of the employer's business and not for a purpose personal to himself. Larson v. Fidelity Mut. Life Assn. 71 Minn. 101, 73 N. W. 711; Slater v. Advance Thresher Co. 97 Minn. 305, 107 N. W. 133; Sina v. Carlson, 120 Minn. 283, 139 N. W. 601.

The facts of the present case bring it within the rule. Blumenthal's own testimony is that he was acting within the scope of his agency and authority and with a view to the furtherance of his employer's business. Whether he exceeded his authority, in proceeding without legal advice, is, under the principles stated in Smith v. Munch, supra, not important.

3. Come now to the question of liability of defendant Leiser Company for the acts of Mrs. Balfany. Whether it was within the scope of her authority as a saleslady to institute a prosecution such as this may be doubted, though she, herself, testified that what she did was for the

purpose of furthering the interest of the Leiser Company's store, and that she considered it part of her duty to discover, detect and apprehend anyone who might impose upon her as a saleswoman and procure her employer's money by means of a fraudulent check, or who had obtained money by other fraudulent means, and, after her identification of plaintiff she went the same evening to a ball, accompanied by a detective, to look for a dress that had been stolen from the store. We do not, however, wish to rest this decision on the authority of Mrs. Balfany, implied from the nature of her position as saleslady. It seems clear to us that the jury might find from the evidence that, in what she did, she was acting under authority from Blumenthal, and, as we view the case, he had the power, as the alter ego of the company, to authorize her, as its agent, to do the things which she did do, and that the company is bound thereby. See Stubbs v. Mulholland, 168 Mo. 47, 80, 67 S. W. 650; Mundal v. Minneapolis & St. Louis R. Co. 92 Minn. 26, 99 N. W. 273, 100 N. W. 363. (First opinion—later reversed on other point.) We cannot in our minds separate the things done by Blumenthal from the things done by Mrs. Balfany. If Mrs. Balfany acted without probable cause in identification of plaintiff, we cannot say that defendant Leiser Company is not responsible therefor, because Blumenthal may have believed in her identification. Mrs. Balfany was authorized by Blumenthal to perform a duty, with knowledge that the result might be a prosecution of plaintiff. In our opinion the Leiser Company was responsible for the manner in which she performed that duty, even though Blumenthal may not have had full knowledge of her shortcomings.

4. The burden was on plaintiff to prove that the prosecution was caused by defendant without probable cause and with malice.

The question whether plaintiff established want of probable cause is not free from difficulty. The law protects the prosecutor, even though mistaken, if he had reasonable and probable grounds for the prosecution, that is, such ground as would induce a man of ordinary prudence and discretion to believe in the guilt, and to expect the conviction, of the person prosecuted, and if he acts in good faith on such belief. Smith v. Munch, 65 Minn. 256, 68 N. W. 19.

In determining whether the facts establish want of probable cause, we must take into account, not only such facts as were actually known to the defendant, but also such open and notorious facts as would or should have come to his knowledge had he made reasonable inquiry and investigation. Tabert v. Cooley, 46 Minn. 366, 49 N. W. 124, 13 L.R.A. 463; Price v. Denison, 95 Minn. 106, 113, 103 N. W. 728.

If the facts are undisputed, the question of probable cause is for the court. The inferences to be drawn from any given state of facts are for the court. It is for the court to declare the ultimate conclusion, as to whether facts, either admitted or established by proof, are sufficient to show want of probable cause. In reviewing a nisi prius determination upon a given state of facts as to the existence of probable cause such determination is not treated as a mere conclusion of fact to be sustained if there is evidence reasonably supporting it. It is treated rather as a legal conclusion, and, in reviewing it, an appellate court will measure its correctness by its own judgment from the facts shown, considering the evidence and weighing it as if heard in the court of review, in order to determine the correctness of the determination below. Moore v. Northern Pac. R. Co. 37 Minn. 147, 33 N. W. 334; Lammers v. Mason, 123 Minn. 204, 143 N. W. 359; Cox v. Lauritsen, 126 Minn. 128, 147 N. W. 1093; Williams v. Pullman Co. 129 Minn. 97, 151 N. W. 895, Ann. Cas. 1916E, 374; Michael v. Matson, 81 Kan. 360, 105 Pac. 537, L.R.A. 1915D, 1.

It is, however, the exclusive province of the jury to determine what facts are established by the evidence. Cole v. Curtis, 16 Minn. 161 (182). To this extent the jurors are still triers of the facts. When the facts are in controversy, the subject of probable cause should be submitted to the jury, either for specific findings of the facts or with instructions from the court as to what facts will constitute probable cause. Cole v. Curtis, supra; Burton v. St. Paul, M. & M. Ry. Co. 33 Minn. 189, 22 N. W. 300.

If the issue of probable cause is submitted generally to the jury upon controverted facts, the court of review will assume the existence of facts as favorable to the jury's determination as the evidence will sustain, and

then decide whether those facts and the inferences which the court may draw from them establish want of probable cause.

5. Considering the evidence in this case in the light of these principles, we are of the opinion that want of probable cause was established.

We find no evidence that there was any resemblance between plaintiff and the real offender, except that both were young women of light complexion and hair and of the same nationality, and both had been employed in domestic service in the household of the man whose name had been forged. There was no resemblance in dress nor in personal peculiarities. With no more than this basis, Mrs. Balfany not only undertook to identify plaintiff as the forger, but persisted in it even on the trial, and after another had confessed under oath in her presence to the commission of the offense. She said she recognized plaintiff by the dress she wore and the peculiarity of her eyes. In neither respect was there any resemblance. No attempt was made to learn of the character or antecedents of plaintiff, a circumstance considered of importance. Hirsch v. Feeney, 83 Ill. 548. Had such inquiry been made it would have revealed the fact that plaintiff was of good family, and of Christian character and habits, and a wholly unlikely criminal. No inquiry was made as to her whereabouts on the day the offense was committed. These particular inquiries may not be indispensable in all cases, but they are matters to be considered. The fact is, an innocent girl was arrested and prosecuted without any inquiry, except search which revealed nothing, and upon identification based upon very slender foundation. We sustain the finding of want of probable cause.

The advice of the county attorney was of no great importance, because it was based on the assertion that positive identification had been made.

6. The essential element of malice may be proved in various ways. It may be inferred from want of probable cause. Hanowitz v. Great Northern Ry. Co. 122 Minn. 241, 142 N. W. 196. There are other material facts. Blumenthal was said to have stated that he saw plaintiff in the store when the offense was committed. He did not see her there. Mrs. Balfany, when she first identified plaintiff, charged her

with having procured a blue serge dress. When plaintiff told her she had no blue serge dress, but had a blue silk dress, Mrs. Balfany changed the charge to obtaining a silk dress. The persistence with which Mrs. Balfany continued to charge plaintiff with guilt, even after her innocence had been conclusively established, displays a frame of mind from which ill feeling may be inferred.

The case is remanded for judgment on the verdict, without prejudice, however, to the right of defendant to renew its motion for a new trial.

DIBELL, J. (dissenting).

In my opinion the trial court correctly held that the plaintiff did not sustain the burden of proof of want of probable cause and rightly ordered judgment notwithstanding the verdict.