**Mary Bea ALLEN, Respondent,**

v.

**OSCO DRUG, INC., et al., Appellants.**

**No. 47272.**

Supreme Court of Minnesota.

March 17, 1978.

---

Brown, Bins & Klampe, Frederic N. Brown and Michael D. Klampe, Rochester, for appellants.

Baudler, Baudler & Maus and William J. Baudler, Austin, for respondent.

Heard before PETERSON, YETKA, and IVERSON, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Osco Drug, Inc. (Osco Drug), and Maurice Gintz appeal from an order denying their post-trial motion and from judgment in a malicious-prosecution action. After a trial in district court, a jury found by special verdict that appellants had maliciously and without probable cause instituted criminal proceedings against respondent, Mary Bea Allen. Appellants' motion for an order amending jury's verdict or in the alternative, for a judgment notwithstanding the verdict, or for a new trial was denied. We affirm.

The issues presented on appeal are:

(1) Did the trial court err in submitting the issue of probable cause to the jury?

(2) Did the trial court err in excluding evidence of appellant Gintz' prior experiences with forged checks?

(3) Did the trial court err in its instructions to the jury on the issue of malice?

Shortly after midnight on October 30, 1974, Allen's purse was stolen in Austin, Minnesota. The purse contained a wallet with identification and a checkbook with 15 to 25 blank checks. The theft was reported to the Austin police within the hour and to the Northwestern State Bank of Austin at about 8 a. m. the next morning. The Austin police assigned Detective Kenneth Hines to the case. He handled the investigation in its entirety.

Approximately 15 forged checks were issued using the stolen check blanks. The bank gave Allen a photocopy of each check, and she took each of them to Detective Hines. The check involved in this case, No. 292, was issued on October 31, 1974, to the Osco Drug Store at Apache Mall in Rochester, Minnesota. The parties stipulated that it was a forgery. Gintz was the manager of that store and was in charge of handling checks returned to the store as forgeries or alleged forgeries. Osco Drug is a subsidiary of Jewel Companies, Inc.

When the check was returned by the First National Bank of Rochester to Osco Drug, a slip with the notation "alleged forgery" was attached. The check was redeposited by Gintz, but it was returned a second time with a notation that there were insufficient funds to pay it. Gintz phoned Allen's bank and asked for the department that handles insufficient funds checks. He did not make any inquiry of the bank regarding the forgery allegation.

Gintz then phoned Allen, told her that the store was holding her check, and demanded that she redeem it. Allen informed Gintz that she did not issue the check; that her checkbook had been stolen; that forged checks had been issued; and that some forged checks had been issued in Rochester, including at least one other check in Apache Mall. Allen also told Gintz that he could verify the information with Detective Hines of the Austin Police Department.[1] Gintz called the Rochester police, but they had no record of the alleged forgery. On January 29, 1975, appellants sent Allen a form letter demanding payment within 7 days and threatening criminal prosecution.

Immediately upon receipt of the letter, Allen phoned Gintz. She repeated the information she had given Gintz during the first conversation. Gintz stated that he would not contact anyone further about the check. Following the second conversation, Gintz made no additional investigation of the sources suggested by Allen.

On February 21, 1975, Gintz went to the Rochester Police Department to swear out criminal complaints against several persons, including Allen. While at the police department, and before signing the complaint, Gintz was told by the Rochester police that Allen's checkbook had been stolen and that several forged checks had been passed in Rochester. After receiving this information, Gintz signed the complaint.

On February 28, 1975, Allen was arrested on a warrant, booked, and released on her own recognizance. On April 18, 1975, Allen

---

1. Allen testified that Gintz was rude on the phone. The trial court stated that the jury could have reasonably found Gintz to have adopted an indifferent and arrogant attitude toward plaintiff.

pleaded "not guilty," and 5 days later the charge was dismissed on motion of the prosecuting attorney. Thereafter, Allen brought a malicious-prosecution action against Osco Drug and Gintz. The jury found that the complaint was issued without probable cause and with malice, and it awarded Allen $1,500 in compensatory damages, $8,000 in punitive damages against Osco Drug and $630 in punitive damages against Gintz.

1. *Probable cause.* The question of whether probable cause is an issue for the court or the jury is clear under Minnesota law. Although there are some cases which may be read as making probable cause a jury question,[2] the correct rule was set forth in *Survis v. A. Y. McDonald Mfg. Co.,* 224 Minn. 479, 499, 28 N.W.2d 720, 731 (1947), as follows:

"Where the facts are not in dispute, the issue of probable cause should be determined by the trial court. Where the facts are in dispute, they should be submitted to the jury, either (a) for the return of specific findings of fact or (b) for the return of a general verdict in accordance with appropriate instructions and dependent on whether the jury finds one or another version of the facts to be true. *Cole v. Curtis,* 16 Minn. 161 (182) [Gil. 161]; *Burton v. St. P. M. & M. Ry. Co.,* 33 Minn. 189, 22 N.W. 300; *Polzin v. Lischefska,* 164 Minn. 260, 204 N.W. 885; *Reiherzer v. Bresky,* 170 Minn. 266, 212 N.W. 456. Upon appeal to this court, we are required to determine the issue of probable cause rather as a legal conclusion than as a mere question of fact. Thus, in *Eastman v. Leiser Co.,* 148 Minn. 96, 102, 181 N.W. 109, 112, the principle was stated to be:

" 'If the facts are undisputed, the question of probable cause is for the court. The inferences to be drawn from any given state of facts are for the court. It is for the court to declare the ultimate conclusion, as to whether facts, either admitted or established by proof, are sufficient to show want of probable cause. In reviewing a nisi prius determination upon a given state of facts as to the existence of probable cause such determination is not treated as a mere conclusion of fact to be sustained if there is evidence reasonably supporting it. It is treated rather as a legal conclusion, and, in reviewing it, an appellate court will measure its correctness by its own judgment from the facts shown, considering the evidence and weighing it as if heard in the court of review, in order to determine the correctness of the determination below.' "

This rule is in line with the majority of jurisdictions.[3]

The reason for making what appears to be a question of fact—i. e., what is reasonable conduct under the circumstances—into a question of law is the court's distrust of the malicious-prosecution action. Prosser, Torts (4 ed.) § 119, p. 846. The best procedure would have been for the court to submit special verdicts on the disputed facts to the jury and then decide the issue based on the jury's findings or to instruct the jury on which facts it should find for plaintiff. Cf. *Cole v. Curtis,* 16 Minn. 161(182) (1870); *Cohen v. Cook,* 224 Tenn. 729, 462 S.W.2d 499 (1970). The trial court instead gave a detailed instruction on probable cause without specifying which facts should be determined and submitted the issue to the jury.[4]

Even where the trial court correctly submits the issue of probable cause to the jury,

---

**2.** E. g., *Beske v. Sackett,* 173 Minn. 595, 218 N.W. 562 (1928); *Fiola v. McDonald,* 85 Minn. 147, 88 N.W. 431 (1901).

**3.** Prosser, Torts (4 ed.) § 119, p. 847. Restatement, Torts, § 673.

**4.** It is possible to read *Lammers v. Mason,* 123 Minn. 204, 143 N.W. 359 (1913), as approving of the procedure followed by the trial court and

suggesting that the court should simply give a definition of probable cause and then submit the issue to the jury. This procedure, however, does not always adequately preserve the trial court's role in the determination. In the instant case, the specific factors referred to by the trial court in its memorandum are the factors which sustain its conclusion of no probable cause.

it is the duty of this court to review the facts de novo and to determine the issue as a matter of law. In its memorandum in this case, the trial court affirmed the jury's finding of lack of probable cause. There was little or no dispute about the facts, as appellants admitted in oral argument. Thus, since appellants had the issue of probable cause decided both by the jury and the trial court, they have no cause to complain.

Appellants argue that the mailing of the letter on January 29, 1975, constituted probable cause as a matter of law. Minn.St. 609.535 [5] provides inter alia that the intent element in a worthless-check charge may be proved by showing failure to pay within 5 business days after the mailing of notice of nonpayment. If Allen had, in fact, issued the check and had not responded to the letter consistently with her previous response, there would be some merit to appellants' claim. In light of Allen's repeated consistent explanation, Gintz' failure to investigate fully, and Gintz' ignoring the information received on the day he signed the complaint, this contention is not persuasive.

Appellants' reliance on *Landers v. Kroger Co.*, 539 S.W.2d 130 (Tenn.App.1976), and *Nichols v. Woodward & Lothrop, Inc.*, 322 A.2d 283 (D.C.App.1974), certiorari denied, 419 U.S. 1108, 95 S.Ct. 780, 42 L.Ed.2d 804 (1975), is misplaced. In *Landers,* the court held that there was probable cause to institute proceedings for the issuance of a worthless check. The manager of the store had sent a letter to the plaintiff pursuant to a Tennessee statute similar to § 609.535, but the plaintiff never received the letter and thus did not respond. Unlike the present case, the manager had no reason to believe that the situation was anything other than one involving a worthless check. In the present case, there was an immediate and consistent response by Allen.

The *Nichols* case involved what appears to be a standard issue of review of a jury's finding of fact. Unlike Minnesota, probable cause in the District of Columbia is a question of fact for the jury. The *Nichols'* court upheld a jury's finding of probable cause for the arrest of a suspected shoplifter despite the existence of an allegedly plausible explanation for the suspected shoplifter's actions. The court declined to hold that an officer was required to believe the explanation of a suspected shoplifter.

Although appellants in the present case did not have to accept Allen's explanation, the ease with which they could have verified her explanation makes their failure to accept it unreasonable. See, *Montgomery Ward, Inc. v. Keulemans*, 275 Md. 441, 340 A.2d 705, 709 (1975).

Probable cause is "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Lammers v. Mason*, 123 Minn. 204, 205, 143 N.W. 359 (1913). The trial court instructed the jury in just those words. The court also instructed the jury that it could consider whether Gintz' investigation was reasonable

5. Minn.St. 609.535 provides in part: "Subdivision 1. Definition. 'Credit' means an arrangement or understanding with the drawee for the payment of the check or other order for the payment of money to which this section applies.

"Subd. 2. Acts constituting. Whoever issues any check or other order for the payment of money which, at the time of issuance, he intends shall not be paid, is guilty of a misdemeanor. In addition, restitution may be ordered by the court.

"Subd. 3. Proof of intent. Any of the following is evidence sufficient to sustain a finding that the person at the time he issued the check or other order for the payment of money, intended it should not be paid:

"(1) Proof that, at the time of issuance, he did not have an account with the drawee; or

"(2) Proof that, at the time of issuance, he did not have sufficient funds or credit with the drawee and that he failed to pay the check or other order within five business days after mailing of notice of nonpayment or dishonor as provided in this subdivision; or

"(3) Proof that, when presentment was made within a reasonable time, the issuer did not have sufficient funds or credit with the drawee and that he failed to pay the check or other order within five business days after mailing of notice of nonpayment or dishonor as provided in this subdivision."

and instructed it on the factors which it could consider in making that determination. Failure to make an investigation of facts which are easy to verify, without further explanation, charges the prosecutor with those facts which he would have learned from the investigation. *Eastman v. Leiser Co.,* 148 Minn. 96, 102, 181 N.W. 109, 112 (1921); *Boyd v. Mendenhall,* 53 Minn. 274, 55 N.W. 45 (1893). Thus, the court's instructions were correct.

It would be possible to decide this issue on appellants' failure to investigate after the second phone call. In light of the court's instruction, the jury could have found that appellants' failure to investigate was unreasonable. Under the *Boyd* case, appellants would then be charged with the knowledge of Detective Hines that the checks had been stolen and forged, and this knowledge would have constituted lack of probable cause as a matter of law.

■ In addition to the failure to investigate after the second phone call, however, there is an even more flagrant failure on the part of appellants. Even if Gintz was justified in going to the police after his call to the bank for a limited inquiry and his call to the Rochester (not Austin) police, he certainly was not justified in signing the complaint after receiving information from the Rochester police which fully corroborated Allen's story. The instituting of criminal charges by Gintz at that time is sufficient to show both lack of probable cause and malice.

■ 2. *Exclusion of evidence of Gintz' prior experiences with forged checks.* At trial, Gintz testified that he previously had handled about 500 checks which had been returned as forgeries. He further testified that when such checks were returned he would call the person whose name appeared on the check and ask the person to come in to verify that the signature on the check was a forgery. Allen's attorney objected to this testimony on the ground of relevance, and the answer was stricken. In an offer of proof, appellants' counsel stated that Gintz would testify that in all previous cases of forgery the person Gintz contacted

would come in, verify the signature as a forgery, and help locate the forger. Appellants argue that this evidence was relevant to Gintz' state of mind on the issues of malice and the reasonableness of his belief that Allen had written the check.

Although his previous experiences with forged checks might conceivably lead Gintz to suspect Allen, the probative value of the evidence as offered was extremely limited. On the issue of the reasonableness of Gintz' actions, the offer of proof gives no indication of the ways in which the other persons had cooperated, other than that they came in to verify the forgery. Allen, in fact, did cooperate by giving the appellants the information necessary to verify her claims. The only difference here was that Allen refused to come in and instead attempted to deal with appellants by phone. Insofar as this court examines the facts anew on the issue of probable cause, this evidence, if admitted, would not change the result.

Appellants also argue that the excluded evidence was relevant to the issue of malice. Insofar as malice depends upon the state of mind of Gintz, his prior experience could be relevant to the question of whether he had acted maliciously; however, as with the case of reasonableness, the probative value of the proffered evidence is slight. In view of the other facts in the case, especially Allen's cooperation by telephone, the fact that she did not actually come to the store to verify the forgery does not make Gintz' belief reasonable. Additionally, since there were other inferences which the jury could have made on the issue of malice, under the instructions given, it is unlikely that the addition of this evidence would have changed the result.

Relevancy objections are addressed to the trial court's discretion, and its ruling should not be reversed except for an abuse of discretion. *Renne v. Gustafson,* 292 Minn. 218, 194 N.W.2d 267 (1972). Evidence which is relevant nonetheless may be excluded if its relevance is outweighed by other factors. See, Rule 403, Rules of Evidence. Prior Minnesota cases have recognized that undue confusion or time con-

sumption may be grounds for excluding otherwise relevant evidence. *State v. Gavle,* 234 Minn. 186, 208, 48 N.W.2d 44, 56 (1951). The trial court stated, in sustaining the objection to this testimony, that the line of questions would open "the whole Pandora box," indicating that it felt the probative value was outweighed by the possible consumption of time and confusion which would result from questions about what other people did. This ruling was not an abuse of discretion.

■ 3. *Malice.* Appellants claim that the trial court's instruction on the issue of malice was erroneous.[6] They argue that the instruction was prejudicial insofar as it allowed the jury to find the element of malice on something less than what the appellants call "actual malice." They contend that jury instructions proposed by them should have been given on this issue but do not argue that the evidence was insufficient to support the verdict under the instruction given.

Appellants recognize that the part of the malice instruction, which they term "implied malice," is taken directly from the case of *Lammers v. Mason,* 123 Minn. 204, 205, 143 N.W. 359, 360 (1913). Their argument is that an actual-malice standard, which they find in earlier Minnesota cases, is mandated by the United States Supreme Court decision in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

*Garrett v. Mannheimer,* 24 Minn. 193 (1887) and *Hanowitz v. Great Northern Ry. Co.,* 122 Minn. 241, 142 N.W. 196 (1913), are cited by appellants for an actual-malice standard in a malicious-prosecution action. In *Garrett,* this court ruled that it was error to exclude a question to the defendant as to whether he believed he had a valid and legal civil claim against the plaintiff. The court stated, "Actual malice is a state or condition of mind." 24 Minn. 194. This statement is not inconsistent with later cases and may be seen as another way of distinguishing the malice element of malicious prosecution from the implied malice in defamation actions.

*Hanowitz* stands for the proposition that malice and probable cause are distinct elements in a malicious-prosecution case. In reaching that holding, this court explained:

" * * * The malice which is the essential element of malicious prosecution is not, like the malice essential in libel, slander and false imprisonment, a mere fiction of the law; it is a state of mind to be proved as a fact. Want of probable cause may exist without malice."

122 Minn. 244, 142 N.W. 197.

*Hanowitz* went on to say that in the proper case, malice may be, but need not be, inferred from lack of probable cause.[7] Other jurisdictions also allow the malice element in malicious prosecution to be inferred from lack of probable cause.[8]

---

**6.** The instruction was as follows: "Malice is involved in this kind of action. It does not necessarily mean ill will or hatred toward the person accused. In determining malice you must consider whether the act of filing a criminal complaint against the plaintiff was done by the defendant with cruelty or oppression or insult, or under such circumstances or [was] of such a character as to indicate that the defendants acted with a *reckless disregard of the rights of the plaintiff* so as to leave an inference of malice. Malice is also defined in this way: Whatever is done *willfully and purposefully,* if it be at the same time wrong and unlawful and that known to the party, is of legal contemplation malicious. That which is done *contrary to one's own conviction of duty or with a willful disregard of the rights of others,* whether it be to accomplish some unlawful end or some lawful end by unlawful means or to do a wrong

or unlawful act knowing it to be such, constitutes legal malice." (Italics supplied.)

**7.** The statement in *Price v. Denison,* 95 Minn. 106, 112, 103 N.W. 728, 730 (1905), to the effect that every finding of lack of probable cause gives rise to a presumption of malice is misleading.

**8.** *Adams v. Whitfield,* 290 So.2d 49 (Fla.1974); *Vander Linden v. Crews,* 231 N.W.2d 904 (Iowa 1975) (may be inferred for a private defendant; ill will or spite necessary in suit against public official); *Wesko v. G. E. M., Inc.,* 272 Md. 192, 321 A.2d 529 (1974); *Martin v. City of Albany,* 42 N.Y.2d 13, 396 N.Y.S.2d 612, 364 N.E.2d 1304 (1977); *Cook v. Lanier,* 267 N.C. 166, 147 S.E.2d 910 (1966); *Gaut v. Pyles,* 212 Va. 39, 181 S.E.2d 645 (1971).

In defamation law, malice is a fiction in that it need not be proved as a separate element in the first instance, but may be presumed from an intentional publication of defamatory material. Prosser, Torts (4 ed.) § 113, p. 771; cf. Restatement, Torts, §§ 579 and 580. In the present case, the jury was clearly instructed that malice was a separate element. The substance of the instruction also clearly indicated that malice is a state of mind. Appellants contend that the instruction allows the jury to infer malice from mere intentional wrongdoing. The instruction does not permit an inference of malice from the mere intentional doing of an act which is wrong but rather requires that the actor *know* that it is wrong. This differs significantly from the strict liability for publication of defamatory material where such knowledge is not required. Also, in contrast to the defamation situation, it would have been possible under this instruction for the jury to find lack of probable cause and no malice. However, as the trial court found, there was sufficient evidence of malice to support the jury's verdict. The fact that Gintz signed the complaint in the face of corroboration of Allen's story by the Rochester police is sufficient to support a finding of recklessness.[9]

Where the court fairly states the substance of the law, the court's instructions should be upheld. *Smith v. The Kahler Corp. Inc.,* 297 Minn. 272, 211 N.W.2d 146 (1973). Because this standard was met, it was not error to refuse appellants' alternative instructions on the same issue. The instruction given by the court included ill will, hatred, recklessness, cruelty, oppression, and knowing wrongdoing. Appellants' requested instructions were incomplete and were included in substance in the court's charge.

Appellants' reliance on the case of *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), in support of their requested actual-malice instruction is misplaced. The implied malice of the law of defamation differs from the malice required in a malicious-prosecution action. Gertz involved defamatory statements made in a news publication. Thus, *Gertz* involved First Amendment issues not present in this case; the present case does not involve protected speech but rather involves the action of having a complaint issue. The United States Supreme Court has not applied the reasoning of *Gertz* to cases involving purely private actions outside the context of freedom of the press, and it is unlikely that the court would go as far as is suggested by appellants.

Had Gintz merely reported his suspicions to the Rochester police, then any alleged defamation might have been privileged as contended by appellants. Gintz, however, chose to go further in the face of strong indications that he was wrong.[10]

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

9. Other jurisdictions require a strong showing of malice to support an award of punitive damages: *Columbus Finance, Inc. v. Howard,* 38 Ohio App.2d 7, 67 Ohio O.2d 116, 311 N.E.2d 32 (1973) (ill will or spite); *Park v. Security Bank & Trust Co.,* 512 P.2d 113 (Okl.1973) (ill will or hatred); *Cook v. Lanier, supra* (actual malice, recklessness, wantonness); *Giant of Virginia, Inc. v. Pigg,* 207 Va. 679, 152 S.E.2d 271 (1967) (circumstances of insult, rudeness, ill will). The recklessness of appellants' conduct supports the punitive damage award in this case. *Benson Co-op Creamery Assn. v. First District Assn.,* 276 Minn. 520, 529, 151 N.W.2d 422, 428 (1967), citing McCormick, Damages, § 79.

10. It should be noted that the facts of the present case would support a finding of actual malice necessary to overcome a qualified privilege. Prosser, Torts (4 ed.) § 115, p. 791. Any "privilege" to sign a criminal complaint must first depend on the existence of probable cause.