**U.S. FIRE INSURANCE COMPANY, Plaintiff–Appellant,**

v.

**BELTMANN NORTH AMERICAN CO., INC., and James J. Cash, Defendants–Appellees.**

No. 88–2921.

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1989.

Decided Aug. 23, 1989.

Rehearing Denied Sept. 25, 1989.

D. Kendall Griffith, Kathleen A. McQueeny, Kathryn A. Spalding, Peter C. Morse, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiff-appellant.

Stephen B. Horwitz, Jacobs, Burns, Sugarman & Orlove, William T. Coleman, Susan M. Langlotz, Hedberg, Tobin, Flaherty & Whalen, Chicago, for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS and FLAUM, Circuit Judges.

CUMMINGS, Circuit Judge.

The U.S. Fire Insurance Company ("U.S. Fire"), a New York corporation, appeals the August 31, 1988, decision of the district

court, which determined that an insurance policy issued to the Beltmann North American Company ("Beltmann"), a Minnesota company, potentially covers a claim of retaliatory discharge advanced against Beltmann by a former employee (App. A21–A42).[1] The decision of the district court compels U.S. Fire Insurance to defend Beltmann, or indemnify Beltmann for its legal costs arising out of the lawsuit for retaliatory discharge, as well as potentially indemnifying Beltmann for any ultimate loss incurred. We disagree and therefore reverse.

James Cash, formerly employed by Beltmann, sued his former employer in the Northern District of Illinois in January 1986. He alleged Beltmann had discharged him in retaliation for his refusal to participate in a scheme to defraud the State of Illinois. His suit was premised upon the tort of retaliatory discharge, breach of a contractual duty, and a failure to pay back wages and benefits due under the Illinois Wage Payment and Collection Act. Beltmann tendered its defense to its insurer, U.S. Fire, which has been defending[2] under a reservation of rights. U.S. Fire then brought this action seeking a declaration of non-coverage, contending that while the only possible basis for coverage would be for personal injury, the policy excludes from coverage the tort of retaliatory discharge,[3] and even if the policy does not exclude it, the public policy of Illinois would preclude insuring against such an act.

Along with U.S. Fire's promise to insure against the ultimate loss for occurrences as covered by the insurance policy, it also is obliged to bear the costs of defending against any lawsuit which may result in liability arguably covered by the policy. Thus if it is possible that Cash's action may result in a loss included within the policy, U.S. Fire is obliged to defend this action. This remains true even if U.S. Fire ultimately shows that the damages awarded Cash, assuming judgment for Cash on his suit, are excluded by the policy. Consequently, the issue here is not whether the putative loss is covered by the policy, but rather whether it is at all possible that any loss arising from the allegations in Cash's complaint may be covered by the policy. See *National Fidelity Life Ins. v. Karaganis*, 811 F.2d 357, 361 (7th Cir.1987) (insurance policy should be construed in favor of the insured).

Under the insurance policy issued by U.S. Fire, coverage is extended for personal injury liability. Personal injury is defined in the policy as "injury, such as but not limited to, libel, slander, defamation of character, discrimination, false arrest, malicious prosecution or humiliation ..." arising from an occurrence, which is defined in the policy as "an offense which results in personal injury, other than an offense committed with actual malice...." Cash's claim alleges an injury which arguably falls under the personal injury rubric of the policy, but may nonetheless be excluded if the injury was provoked by Beltmann's "actual malice." Unfortunately, the policy fails to offer a definition for actual malice.

Since this is a diversity action, the district court is bound to apply the law of the forum state, *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188

---

1. In addition to its opinion of August 31, 1988, the district court had rendered a June 14, 1988, opinion about choice of law, subject-matter jurisdiction, and characterizing Cash's claims (App. A6–A20). The earlier opinion appears in 703 F.Supp. 681 and the second (non-sequentially) in 695 F.Supp. 941.

2. Cash's lawsuit in the Northern District of Illinois resulted in a jury award of $250,000 in compensatory damages and $137,409 in punitive damages. Both Cash and Beltmann have appealed the trial court decision in that case, but this Court has yet to address those consol-idated appeals. U.S. Fire has continued to defend Beltmann on appeal pursuant to the insurance policy but still under a reservation of rights, which of course turns on this appeal.

3. Beltmann apparently concedes that the only possible basis for coverage would be the claimed tort of retaliatory discharge, since the other claims of Cash are clearly outside the scope of the coverage. A finding of coverage would compel U.S. Fire to defend the whole action, but it would only remain potentially subject to indemnifying Beltmann under the tort claim.

(1938), including its choice of law rules. See *Klaxon v. Stentor Elec. Mfg.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Illinois is the forum state and its choice of law directs a court to turn to the state where the policy was issued for its interpretation, unless such an interpretation would upset Illinois public policy. *Hofeld v. Nationwide Life Ins. Co.*, 59 Ill.2d 522, 528, 322 N.E.2d 454 (1975); *Jadczak v. Modern Serv. Ins. Co.*, 151 Ill.App.3d 589, 593, 104 Ill.Dec. 932, 503 N.E.2d 794 (1st Dist.1987); *Thieme v. Union Labor Life Ins. Co.*, 12 Ill.App.2d 110, 112–113, 138 N.E.2d 857 (1st Dist.1956). Since the policy was issued in Minnesota, where Beltmann is incorporated and has its principal place of business, Minnesota law governs what the term "actual malice" means. After ascertaining what actual malice means in this context, a proper analysis reverts to Illinois law, because Illinois is where the alleged tort occurred and where the underlying tort action was filed, to determine whether that meaning of actual malice is incorporated, explicitly or implicitly, in the elements for retaliatory discharge under Illinois law.

Starting with the language of the policy itself, the use of the term "actual malice," as opposed to simply malice, was surely meant as a limiting feature, and in fact the specific torts included within the definition of personal injury can all be proven without a finding of ill will or personal animus on the part of the defendant.[4] Since Minnesota courts have not explicitly addressed actual malice in the context of insurance contracts, a broader search is required. A logical starting place is a legal dictionary. Black's Law Dictionary (5th ed. 1979) defines actual malice or malice in fact as a "desire or intent to injure, while mere 'malice in law,' or 'implied malice' means wrongful act done intentionally, without just cause or excuse...." See also *Cherne Industrial, Inc. v. Grounds & Associates*, 278 N.W.2d 81, 95 (Minn.1979), in which the Supreme Court of Minnesota defined malice as "the intentional doing of a harmful act without legal justification." Malice alone contemplates an intentional act undertaken with the knowledge that it is wrongful, while actual malice adds the desire to injure another or, as discussed below, an affirmative disregard of the known harm accruing to others as a result of the intentional act.

In the area of defamation, in which actual malice is most commonly associated, it is well known as a constitutional standard. See, *e.g.*, *New York Times v. Sullivan*, 376 U.S. 254, 279–280, 84 S.Ct. 710, 725–726, 11 L.Ed.2d 686 (1964) (knowing falsity or reckless disregard for the truth). But in defamation cases of a non-constitutional context, the Minnesota courts apply their own common law meaning to the element of actual malice, which requires that the defendant, to be held liable, had to have acted with "actual ill will, or a design causelessly and wantonly to injure plaintiff," *Frankson v. Design Space Int'l*, 394 N.W.2d 140, 144 (Minn.1986), quoting *McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 98, 235 N.W.2d 371, 375 (1975).[5]

---

**4.** For example, discrimination can take the form of disparate treatment or intentional discrimination, as well as disparate impact, in which intent to discriminate need not be directly proven but could instead be presumed in light of other convincing evidence (unless *Wards Cove Packing Co. v. Atonio*, —— U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), narrows the prior disparate impact cases). Even the tort of malicious prosecution, which would seem to demand some intent on the part of the defendant to injure the plaintiff, may be proven on a showing that the defendant acted with "recklessness," or that the defendant acted "contrary to one's own conviction of duty *or* with a willful disregard of the rights of others." *Allen v. Osco Drugs, Inc.*, 265 N.W.2d 639 at 645 n. 6 and 646 (Minn.1978) (emphasis added). Under Minnesota law, acting contrary to one's own conviction of duty apparently contemplates an intentional act that the defendant knows is wrong, but not necessarily an act performed with the intention of harming the plaintiff, or even with the knowledge of the consequences certain to result from the act. The other listed torts similarly do not always necessitate a finding of ill will or animus.

**5.** See also *Clancy v. Daily News Corp.*, 202 Minn. 1, 277 N.W. 264 (1938), in which the Minnesota Supreme Court approved the following instruction in a common law defamation case:

Proof of actual malice may be made by showing bad faith in the defendants. It may appear that the occasion was made use of as a

Outside the context of defamation, there are comparable themes for malice and actual malice, although the distinctions between the two are by no means certain. In *Hogs Unlimited v. Farm Bureau Mut. Ins. Co.*, 401 N.W.2d 381, 383 (Minn.1987), the Minnesota Supreme Court grappled with the meaning of an insurance policy which covered acts of vandalism or malicious mischief, which the policy went on to define as "the willful and malicious damage to or destruction of the property covered." The court ultimately defined the malice component in malicious mischief as not necessarily ill will or a vindictive purpose, but [also] the destruction of property ... in conscious or intentional disregard of the rights of others...." That reading of the willful and malicious clause, which is equivalent to the malicious element in malicious mischief, coincides with an earlier Minnesota Supreme Court discussion of actual malice in the area of exemplary damages. In *Benson Cooperative Creamery Ass'n v. First District Ass'n*, 276 Minn. 520, 151 N.W.2d 422 (1967), that court adopted the following commentary regarding exemplary damage awards:

> To subject a wrongdoer to liability for exemplary damages, it must be found that he acted with actual malice, ill will or conscious disregard of consequences to others. Almost universally the decisions hold that mere 'implied malice,' which is attributed to any actionable conduct, does not suffice, nor does mere negligence.

151 N.W.2d at 428, quoting McCormick, Damages § 79.

In *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639 (Minn.1978), the Minnesota Supreme Court again addressed the concept of malice, this time in the area of malicious prosecution. There the defendant appealed with respect to a jury finding of malicious prosecution by arguing that the trial court failed to instruct the jury that it had to find that the defendant acted with actual malice, and instead allowed an inference of mere malice. The trial judge instructed the jury that "[m]alice is involved in this kind of action. It does not necessarily mean ill will or hatred...." *Id.* at 645 n. 6. The instructions continued, quoting from *Lammers v. Mason*, 123 Minn. 204, 143 N.W. 359, 360 (Minn.1913), that malice is defined as "[w]hatever is done willfully and purposefully, if it be at the same time wrong and unlawful and that known to the party, is of legal contemplation malicious," 265 N.W.2d at 645 n. 6, which is simply malice and not actual malice. Without expressly concluding whether actual or simple malice was required, the state supreme court nonetheless rejected the defendant's contention that the challenged instruction was deficient. Rather the court decided that the instruction "does not permit an inference of malice from the mere intentional doing of an act which is wrong but rather requires that the actor *know* that it is wrong," *id.*, 123 Minn. at 246, 143 N.W. 359 (emphasis original). This again is simply malice since no query is made as to the actor's putative intent to harm the plaintiff, or the defendant's conscious disregard of the consequences sure to result from his action.[6] While *Allen* indicates a differing

camouflage behind which to hide for the purpose of maligning plaintiff in a way not justified by the facts. Malice may be proved by extrinsic evidence of personal ill feeling or otherwise....

**6.** But the confusion does not end there. The state supreme court then determined that in any event the defendant's conduct supported a finding of recklessness, which would satisfy the malice component for malicious prosecution. 265 N.W.2d at 646. Recklessness seemingly would not necessarily implicate an intentional act known by the actor to be wrong, which we have defined as malice, and would very doubtfully fall within any definition of actual malice. See *Minnesota v. Frost*, 342 N.W.2d 317 (Minn.

1983) (defining recklessness in criminal context); *Brandsoy v. Bromeland*, 177 Minn. 298, 225 N.W. 162 (Minn.1929) (defining recklessness in civil context). Furthermore, the court also upheld the instructions because the "[trial] court fairly states the substance of the law.... The instruction given by the court *included ill will, hatred*, recklessness ... and knowing wrongdoing." *Id.* (emphasis added). According to the court's earlier footnote reproducing the trial court's instructions, the trial court explicitly did not include ill will or hatred. 265 N.W.2d at 645 n. 6. And recklessness and knowing wrongdoing are commonly differing standards not includible within the same instruction. Again adding to the confusion, the *Allen* court

standard of maliciousness for malicious prosecution as opposed to the standard articulated in *Hogs Unlimited* for malicious mischief (the former mere malice, the latter actual malice), *Allen* remains consistent with previous Minnesota cases concerning malicious prosecution. See, *e.g., Lammers, supra; Nelson v. International Harvester Co.*, 117 Minn. 298, 135 N.W. 808 (Minn. 1912), and given the different public concerns regarding the two torts the aforementioned inconsistency is not illogical nor terribly unsettling.

▪ In sum, there are common strands of meaning throughout Minnesota law attached to the concept of malice, and consistent differentiation between the gradations to support a conclusion as to the appropriate definition of actual malice. Both actual and simple malice require that the defendant acted intentionally with knowledge that her conduct was wrongful. Actual malice entails the further component of an intent on the part of the defendant to injure the plaintiff by the wrongful act, or an affirmative conscious and intentional disregard of the specific consequences which are certain to injure the plaintiff as a result of the wrongful act. With this background of actual malice in mind, our analysis turns to the elements required for a claim of retaliatory discharge under Illinois law.

In *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill.2d 526, 116 Ill.Dec. 694, 519 N.E.2d 909 (1988), the Illinois Supreme Court articulated the elements to be proved for the claim of retaliatory discharge:

A plaintiff states a valid claim for retaliatory discharge only if she alleges that she was (1) discharged; (2) in retaliation for her activities; and (3) that the discharge violates a clear mandate of public policy.

*Id.* at 529, 116 Ill.Dec. 694, 519 N.E.2d 909. Obviously, if actual malice exists within these elements at all, it must be grounded in the second.[7] The issue is really whether, given that the plaintiff proves the retaliatory nature of the employer's action, has the plaintiff therefore *de facto* shown actual malice?

▪ Beltmann argues that actual malice is not necessarily incorporated within the *Hinthorn* second element of retaliatory discharge. According to Beltmann, while an intent to injure an employee is often behind a retaliatory discharge, an employer may fire an employee, even in the retaliatory context, without harboring ill will or an intent to harm the individual. Beltmann points to the Cash claim as an example. Assuming that what Cash alleges is true, *i.e.*, he was fired for refusing to go along with a scheme to defraud the State of Illinois, then Beltmann may have been motivated to fire Cash not out of any intent to harm Cash for his refusal to cooperate, but rather simply to replace him with someone willing to further the fraud. Thus the intention behind the discharge was allegedly to further the fraud, not harm Cash. According to Beltmann, in such a situation Cash would satisfy the elements of retaliatory discharge, yet no intent to harm or any personal animus would exist.

The crucial element for our purposes is again the second one, for the issue is whether subsumed within this element is a finding of actual malice. The third element refers to unlawful motives, and while it may be unlawful to fire an employee who refuses to participate in criminal activity as alleged by Cash, see *Petrik v. Monarch Printing Corp.*, 111 Ill.App.3d 502, 67 Ill. Dec. 352, 444 N.E.2d 588 (1st Dist.1982) (plaintiff stated a cause of action for retaliatory discharge); but see also *Zaniecki v. P.A. Bergner & Co.*, 143 Ill.App.3d 668, 97 Ill.Dec. 756, 493 N.E.2d 419 (3rd Dist.1986) (disagreeing with *Petrik*), it is of course not unlawful for an employer to fire an employee for spiteful yet lawful reasons.

noted that there the defendant's reckless conduct supported the punitive damages awarded and then cited *Benson Co-op Creamery* and McCormick, neither of which included recklessness as a standard for punitive damages. 265 N.W.2d at 646 n. 9.

**7.** See also *Beckman v. Freeman United Coal Mining Co.*, 123 Ill.2d 281, 287, 122 Ill.Dec. 805, 527 N.E.2d 303 (1988), which stated the elements slightly differently:

[H]e must (a) establish that he exercised a statutory or constitutional right, (b) that he was discharged because of his activity, and (c) that defendant's conduct was motivated by unlawful considerations.

But Beltmann has confused its goal with intent. The overriding goal was supposedly to replace the employee, but the discharge also manifests an intent to harm the employee. An employer guilty of retaliatory discharge is not as here just protecting its fraudulent interests, but rather is intentionally and deliberately depriving an individual of his job as punishment for properly refusing to engage in fraudulent conduct. Just as the goal of a street mugger may be the accumulation of wealth, and though he may not harbor a specific animus toward his victims, most would conclude that his attacks, no matter how carefully executed, are nonetheless marked by an intent to harm each victim. But even if goal is divorced from intent, really an exercise in line-drawing, the result is the same. If it can rightly be argued that an employer may have as its only intent the furtherance of the fraud and not specifically to harm the employee, by improperly discharging the employee, the employer has nevertheless consciously and knowingly disregarded the direct consequences of its improper conduct visited upon the employee. By depriving an individual of his job, the employer is immediately causing and then affirmatively ignoring the known harm inuring to the individual while the employer intentionally pursues his wrongful course, thus falling under the umbrella of actual malice. Otherwise a defendant could always escape a finding of actual malice no matter what was alleged by contending that his actions were not taken to hurt the plaintiff, but were instead intended only to please or advance the defendant's own interests.

Accordingly, Cash's claim of retaliatory discharge carries with it a charge of actual malice subsumed within the elements of his claim. While Cash may not have had to prove actual malice as an independent factor, he nonetheless has proved it by satisfying the formal elements of the tort of retaliatory discharge. If he had been unable to show actual malice, his claim for retaliatory discharge would have failed for failure to prove that the discharge was retaliatory in nature. Since actual malice is a necessary component of Cash's claim, and because the insurance policy specifically excludes coverage for personal injuries arising from offenses committed with actual malice, Cash's claim is not a covered claim.[8] Consequently, U.S. Fire has neither a duty to indemnify Beltmann against any loss or defend Beltmann against Cash's claim or otherwise indemnify it for the cost of defending against Cash's action.

The decision of the district court is reversed.

---

**8.** Because this policy does not cover Cash's claim, there is no need to consider the parties' opposing contentions as to whether or not Illinois public policy prohibits insurance coverage for retaliatory discharge.