# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1127
_____

Kendall Nygard

*Plaintiff - Appellant*

v.

City of Orono, a Minnesota municipality

*Defendant - Appellee*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 22, 2025
Filed: December 12, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

The City of Orono prosecuted Jay and Kendall Nygard because Jay replaced his driveway without a permit. A state court dismissed the charge against Kendall because the City code requires only the "individual performing the work" to obtain a permit. *See* **Orono, Minn., CODE § 86-66(b)** (2003), *now* **§ 6.24.210(b)** (2025).

Kendall sued the City, arguing it maliciously prosecuted her. The district court[1] granted the City summary judgment. Kendall appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Jay and Kendall have litigated property disputes with the City and their neighbors for 14 years. In 2010, they installed a wind turbine without a permit. The City sued. A court ordered them to remove it. They repeatedly refused. The court held them both in contempt in 2014. With Jay in jail, Kendall complied with the court's order. She repeatedly failed to comply with a 2018 injunction that ordered removal of nuisance items, including wind turbines. Another lawsuit ended in a mediated settlement in 2019, which allowed Jay and Kendall to buy a neighbor's home.

Jay quickly found problems with the home. He emailed the City on October 2, copying Kendall. He blamed it for water runoff damaging the driveway. He demanded that the City stop it. The City denied responsibility, told Jay the driveway was improperly built, and offered advice on how to fix it. Jay responded indignantly, copying Kendall each time. He called the City "incompetent," insulted a City official's intelligence, and demanded that it fix the water runoff problem.

While this exchange unfolded, Jay began replacing the driveway without a permit. The City told him he could continue and apply for an after-the-fact permit. The City even suggested how to replace the driveway to mitigate water runoff. Jay refused help. He did apply for the after-the-fact permit, adding other items in the application, including a proposed wind-turbine footing. He did not pay the required permit fee. On October 29, the City responded that it would approve the after-the-fact permit if he signed a Builder Acknowledgment Form (the "BAF") and paid the permit fee. The BAF included five "permit conditions," including prohibiting the wind-turbine footing. Jay returned the form but crossed out four conditions, partly

---

[1]The Honorable Jeffrey M. Bryan, United States District Judge for the District of Minnesota.

due to his belief that the City would construe acceptance as "giving up [his] right to harvest the wind." In a November 8 letter, Community Development Director Brian J. Barnhart refused to grant the after-the-fact permit unless Jay signed the BAF without revision and paid the permit fee.

Jay sent several more emails to the City, again copying Kendall. He complained about the BAF's permit conditions, accusing the City of extortion. Barnhart replied on November 27, emailing Jay and copying Kendall. He asked Jay to sign the BAF and pay the permit fee by December 9. Jay quickly refused, copying Kendall. On December 12, Barnhart emailed Jay a third letter, copying Kendall, giving Jay until the end of the day to sign the BAF and pay the permit fee. Neither Jay nor Kendall replied.

The next day, Barnhart referred the matter to City attorney Steven M. Tallen. He accused Jay and Kendall of violating Orono City Code Section 86-66(b) (the "Code"), which requires applying for a permit before replacing a driveway. Later asked why he included Kendall, Barnhart said he did not know she was then living in Florida. He added: "Well, both Jay and Kendall have been in the emails back and forth, I don't know who writes them. And I don't know who orders the work or who directs who to do any response back and forth."

In Tallen's words, he "reviewed the full file including the report of the City's building inspector, the disputed permit application and the [BAF], correspondence between the City and the property owners, Jay and Kendall Nygard, and photographs of the subject property." Based on this review, Tallen believed the evidence supported prosecuting both Jay and Kendall under the Code. His office drafted the complaint and the statement of probable cause. Both were reviewed and approved by a police officer. Tallen later swore: "[N]o [other] City employee or official participated, wrote, reviewed, approved, or was otherwise involved in drafting the criminal complaint or deciding what the complaint contained." A judge determined that probable cause existed to prosecute Kendall under the Code.

At trial, the court dismissed the charge against Kendall because the Code requires only "the individual performing the work" to apply for a permit before

replacing a driveway. *See* **Orono, Minn., Code § 86-66(b)** (2003), *now* **§ 6.24.210(b)** (2025). The court ruled that because Jay performed the work, Kendall was not liable, but found that both the City and the Nygards "acted in good faith."

After trial, Jay and Kendall sued the City in federal court, arguing the Code was void for vagueness. "They also raised a First Amendment retaliation claim, an abuse-of-process claim, and a malicious-prosecution claim. The district court dismissed all claims." *Nygard v. City of Orono*, 39 F.4th 514, 518 (8th Cir. 2022) (*Nygard I*). On appeal, this court affirmed the dismissal of all claims except one: Kendall's malicious prosecution claim. *Id.* at 522-23. Without addressing whether the City prosecuted her with malicious intent, this court held that her complaint alleged sufficient facts to support a claim that the City lacked probable cause to prosecute her under the Code. *Id.* at 523.

On remand, the district court declined to exercise pendent jurisdiction over the malicious prosecution claim. Kendall brought a new malicious prosecution claim, this time invoking diversity jurisdiction. The district court granted the City summary judgment because she could not prove that the City prosecuted her with malicious intent. Kendall appeals. "This court reviews de novo a grant of summary judgment." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc); *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 756 (8th Cir. 2001) (reviewing de novo a district court's grant of summary judgment on a state law malicious prosecution claim). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Torgerson*, 643 F.3d at 1042 (citation and internal quotation marks omitted).

## II.

In Minnesota, malicious prosecution claims have "always been carefully circumscribed" and are not favored in law. *Lundberg v. Scoggins*, 335 N.W.2d 235, 236 (Minn. 1983). "The tort of malicious prosecution has three elements: (1) the action must be brought without probable cause or reasonable belief that the plaintiff would ultimately prevail on the merits; (2) the action must be instituted and prosecuted with malicious intent; and (3) the action must terminate in favor of the

defendant." ***Leiendecker v. Asian Women United of Minn.***, 895 N.W.2d 623, 634 (Minn. 2017) (citation and internal quotation marks omitted). Summary judgment was proper here because Kendall cannot satisfy the second element.

Malicious intent "is a state of mind to be proved as fact." ***Allen v. Osco Drug, Inc.***, 265 N.W.2d 639, 645 (Minn. 1978). It requires that the actor "institute[] a groundless prosecution knowingly and willfully." ***Dunham v. Roer***, 708 N.W.2d 552, 570 n.4 (Minn. Ct. App. 2006). *See also* ***Peterson v. City of Minneapolis***, 2022 WL 17574754, at *3 (Minn. Ct. App. Dec. 12, 2022) (unpublished) (finding no malicious intent where the facts did not establish that an investigator "knowingly and willfully" initiated a groundless prosecution). To establish a claim of malicious prosecution, "a plaintiff must prove, at a minimum, that the defendant knew that its actions were wrong." ***Hirtzinger v. Pinnacle Airlines, Inc.***, 2008 WL 835644, at *16 (D. Minn. Mar. 27, 2008), *citing* ***Allen***, 265 N.W.2d at 646. *See* ***Gunnink v. State***, 2010 WL 3306683, at *6 (Minn. Ct. App. Aug. 24, 2010) (unpublished) ("A malicious[]prosecution claim requires the actor to know that his or her act is wrong.").[2]

The City did not knowingly and willfully institute a groundless prosecution against Kendall. The Code requires applying for a permit before replacing a driveway. *See* **Orono, Minn., CODE**, **§ 86-66(b)** (2003), *now* **§ 6.24.210(b)** (2025). Jay did not do that. The City gave him latitude and time to comply. When he repeatedly refused, Barnhart referred Jay and Kendall for prosecution because (1) they owned the property together, (2) Kendall was copied on every material communication about the dispute, (3) he did not know who wrote the emails, (4) he did not know who directed the work in question, and (5) he did not then know that Kendall lived in Florida. When the referral reached Tallen, he reviewed all the

---

[2] Kendall relies on a jury instruction cited in *Allen* to argue that "malicious intent" requires her to prove only that the City acted with reckless disregard for her rights when it prosecuted her. But *Allen* clarifies that "[t]he instruction does not permit an inference of malice from the mere intentional doing of an act which is wrong but rather requires that the actor know that it is wrong." *Allen*, 265 N.W.2d at 646.

evidence, exercised his independent judgment, and decided to prosecute Jay and Kendall.

Kendall points to no authority establishing that a joint property owner is liable under the Code only if she *physically* performs the work. Barnhart and Tallen could have reasonably believed that Kendall was an "individual performing the work" if she jointly authorized it with Jay, even if she did not conduct the manual labor. *See generally* **Orono, Minn., CODE § 86-66(b)** (2003), *now* **§ 6.24.210(b)** (2025). The facts simply do not support knowing and willful wrongdoing.

Emphasizing this court's prior decision, Kendall believes that the City lacked probable cause, demonstrating malice. But this court did not hold that the City lacked probable cause. *See **Nygard I***, 39 F.4th at 518. This court held that Kendall pled sufficient facts to survive a motion to dismiss. ***Id.*** Even if this court had held that the City lacked probable cause to prosecute her under the Code, it does not change the outcome because "[w]ant of probable cause may exist without malice." ***Allen***, 265 N.W.2d at 645. *See **Olson v. Midwest Bus. Sys., Inc.***, 1993 WL 205176, at *4 (Minn. Ct. App. June 15, 1993) (unpublished) ("[T]he plaintiff must show the defendant acted maliciously *and* without probable cause in initiating criminal proceedings.") (emphasis added).

True, "malice may be . . . inferred from the lack of probable cause." ***Allen***, 265 N.W.2d at 645. But in such cases, probable cause "is so lacking that malice may be inferred." ***Crandall v. Miller & Stevens, P.A.***, 2021 WL 4595535, at *11 (D. Minn. Oct. 6, 2021). Here, any deficiency was not "so blatant that it permits a reasonable inference of malice." ***Id.*** *See **Hoyland v. McMenomy***, 185 F. Supp. 3d 1111, 1129 (D. Minn. 2016) (holding that even if officers' mistaken belief that they had probable cause was objectively unreasonable, it did not equate to malicious intent), *citing **Hanowitz v. Great N. Ry. Co.***, 142 N.W. 196, 197 (Minn. 1913).

Kendall speculates that her history with the City created animus by City officials, which indicates malicious intent. "But such a conclusory allegation is insufficient." ***Bergh v. Zoelle***, 2025 WL 1746904, at *8 (D. Minn. June 24, 2025) (alleging, without evidence, that a criminal referral is "malicious" does not make it

so).  "[M]ere belief that the [prosecution] was sought with malicious intent is insufficient to establish the existence of a genuine issue of material fact." *Dunham*, 708 N.W.2d at 570.  And mere belief is all Kendall has.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____