ZYGMUNT JADCZAK *et al.*, Plaintiffs-Appellees, v. MODERN SERVICE INSURANCE COMPANY, INC., Defendant-Appellant and Third-Party Plaintiff–Appellant (George R. Cayer *et al.*, Defendants-Appellees; Mieczyslaw Waluszko, Third-Party Defendant–Appellee).

First District (5th Division) No. 85—3583

Opinion filed January 9, 1987.

O'Brien, Hanrahan, Wojcik & Fay, of Chicago (E. Garnet Fay, of counsel), for appellant.

Healy & Nolan, of Chicago (Martin J. Healy, Jr., and Daniel B. Malone, of counsel), for appellees Zygmunt Jadczak, Teodor Baron, William Fallmer, and Marion Krupowicz.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by defendant and third-party plaintiff, Modern Service Insurance Company, Inc. (Modern), from entry of the trial court's declaratory judgment in favor of plaintiffs, Zygmunt Jadczak, Teodor Baron, individually and as special administrator of the estate of Grazyna Baron, deceased; William Fallmer, as special administrator of the estate of Maria Krupowicz, deceased; and Marion Krupowicz, and third-party defendant Mieczyslaw Waluszko. The trial court determined that Modern was obligated to provide uninsured-motorist coverage to plaintiffs.

The declaratory judgment action arose out of an automobile accident occurring on February 7, 1982, that resulted in several deaths and serious injuries to plaintiffs. Prior to the accident, defendant George R. Cayer entered into a verbal agreement with his friend, plaintiff Jadczak, who owned a body shop, for the purchase of a 1980 Honda Civic that Jadczak was repairing. The car was being purchased by Mr. Cayer for his wife, Ruth Cayer. Mr. Cayer testified that at this time he was living in Chicago, separate and apart from his wife, who lived in Escanaba, Michigan, but that he did not obtain a formal separation order until September 1982. However, his employer and Jadczak both stated that Mr. Cayer was working in Chicago and returning home on weekends to be with his wife and children in Michigan. Mr. Cayer was registered to vote in Chicago, but had a Michigan driver's license and also had several automobiles insured in Michigan.

Jadczak and Mr. Cayer agreed upon a purchase price of $3,600 for the Honda. On Thursday, February 4, 1982, Mr. Cayer, after giving Jadczak a check for $1,000, called his wife in Escanaba from Jadczak's shop and told her that he had found a car for her and that she should immediately obtain insurance on it. It is undisputed that Ruth Cayer applied for insurance through an agent, William Weissert, who was located in Escanaba. Weissert, in an evidentiary deposition, stated that he was an independent contractor with the authority to bind Modern as to coverage for the interim period until a policy issued; only the home office in Minnesota could issue a policy. The declaration page showed that the policy period commenced on February 5, 1982, and listed Ruth Cayer as the named insured. Coverage included uninsurance liability in limits of $20,000 per person and $40,000 per occurrence. Mrs. Cayer paid a premium on the policy but had not received a policy before the relevant events occurred.

Jadczak testified that after Mr. Cayer called his wife, he (Cayer) drove the car away but returned it the next day, Friday, February 5 to have a faulty radio speaker repaired. Jadczak also stated that he asked for and received permission from Mr. Cayer to use the Honda on the weekend for social purposes. Mr. Cayer stated that he did not take the car home on Thursday because after test driving it, he discovered the speaker problem. He testified that he left it with Jadczak for repairs and planned to pick it up Friday afternoon. He further testified that when repairs were not completed on Friday, he agreed to take possession of the car the following week. Mr. Cayer said that his permission for Jadczak's use of the car was not necessary since the car belonged to Jadczak, not him. However, Mr. Cayer admitted that he had given his friend Jadczak permission to use a truck belonging to him (Cayer) on weekends prior to this occasion.

On Sunday, February 7, 1982, the Honda, while being driven by Jadczak, was involved in an accident with an uninsured motorist. Two passengers in the Honda were killed and the other occupants were seriously injured. Thereafter, Mr. Cayer called his wife and told her to cancel the insurance. According to Mr. Cayer, he did so because the car he anticipated purchasing was destroyed. However, Mr. Cayer's employer and Jadczak testified that Mr. Cayer attempted to retroactively cancel the policy because he feared losing his house in Michigan. Ruth Cayer did cancel the insurance by telephone on February 11, to be retroactively effective February 5, because the vehicle insured was not purchased. No policy was issued and Modern sent a full premium refund to Ruth Cayer on February 19.

After a bench trial, the trial court ruled that coverage existed on

the basis of Modern's policy language defining an "owned" automobile and, at the same time, found that Mr. Cayer was not an owner. Modern appeals from that decision contending that the court erred in determining the factual issue of ownership in Modern's favor but concluding that coverage existed based on the policy description. Modern alleges that the Honda never became an owned vehicle and that Jadczak was the owner, not a permissive user, at the time of the accident.

■■ After careful examination of the record, we conclude that the Modern policy afforded coverage for the Honda at the time of the accident.

■■ ■ In reaching this conclusion, it is necessary to address the choice-of-law issue. The accident, injuries and deaths, and alleged purchase of the car occurred in Illinois; the insurance policy was procured by Ruth Cayer, a Michigan resident, in Michigan; and the policy was issued by a Minnesota company through an agent in Michigan. Illinois choice-of-law rules hold that we need to look to the laws of the State where the policy to be construed was issued or delivered (see *Criterion Insurance Co. v. Reed* (1978), 66 Ill. App. 3d 925, 383 N.E.2d 786), or, among other factors, the place of the last act to give rise to a valid contract (*Hofeld v. Nationwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 528, 322 N.E.2d 522). According to the policy language in the present case, the last act to make the policy valid is the signatures of the president and secretary of the insurer located in Minnesota. Thus, it appears that the laws of Minnesota govern the construction of the policy, and such choice of law is not offensive to the principles of due process and full faith and credit. (See *Allstate Insurance Co. v. Hague* (1981), 449 U.S. 302, 66 L. Ed. 2d 521, 101 S. Ct. 633.) This is true except as to the issue of cancellation since the policy incorporates Michigan law regarding procedures necessary for an effective cancellation of the policy. However, we prefer to utilize the principle that unless a court's attention is directed to a decision of another State bearing on a question before it, the law will be presumed to be the same as that of the forum. (*Mitchell v. Burnett* (1971), 1 Ill. App. 3d 24, 26, 272 N.E.2d 393.) Since the parties did not put forth any foreign law, except as to the cancellation procedures, we will apply Illinois law to the case before us. This is especially appropriate here where Minnesota law applicable to the relevant issues is similar to that of Illinois, the forum State.

■■ ■ After reviewing the record, we conclude that the Honda was an owned vehicle, not only because of the policy language relied on by the trial court, but because, as a matter of law, Ruth Cayer had

an insurable interest in the vehicle. An insurable interest is not necessarily equated with clear title but may arise whenever a person would profit by or gain some advantage by continued existence of the property and would suffer loss or disadvantage by its destruction. (*Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058, 1061, 360 N.E.2d 461.) Here, there is no question but that the Cayers were disadvantaged by the destruction of the Honda which Mr. Cayer intended to purchase for his wife and for which he gave a $1,000 partial payment to Jadczak. Jadczak testified that he never returned the money; Cayer testified to the contrary. There is no documentary evidence as to whether Cayer ever received a refund of the money after the accident. In any event, the accident resulted in the loss of the car that Mr. Cayer had partially paid for with the intent of giving it to his wife. Cayer's intent was clearly manifested by his request to his wife that she immediately procure insurance for the vehicle. These factors are sufficient to show an insurable interest in the Honda. Since Cayer had entered into an oral agreement to purchase the Honda prior to his wife's application for insurance and had made a $1,000 down payment, his wife, for whom he made the payment, had an insurable interest at the time of her application. *Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058, 1061, 360 N.E.2d 461; accord, *Northwestern National Bank v. Maher* (Minn. 1977), 258 N.W.2d 623 (insurable interest may exist even where insured has no title to, lien upon, or possession of the property).

On the declarations page, the insured vehicle was the Honda; Ruth Cayer was the insured; and the policy defines an "owned automobile" as "(a) a private passenger or utility automobile described in this policy." The court in *Reznick v. Home Insurance Co.* (1977), 45 Ill. App. 3d 1058, 1062, 360 N.E.2d 461, held that a similar policy definition ("a private passenger or utility automobile described in the Declarations") covered the car listed on the declarations page even though the insured did not legally own it because the car was a stolen automobile. This is the premise relied upon by the trial court in the present case and is one which we believe to be correct. The Honda clearly falls within the policy's unambiguous definition of an "owned automobile." Modern could have included "actual" or "legal ownership" in the contract as a condition precedent to coverage (see *Blaylock v. Country Mutual Insurance Co.* (1980), 85 Ill. App. 3d 1042, 1046, 407 N.E.2d 849), but did not so limit coverage. We would arrive at the same conclusion if the "owned automobile" definition were found to be ambiguous since Illinois law requires ambiguities in an insurance policy to be resolved in favor of the insured and against the

insurer. *Dolan v. Welch* (1984), 123 Ill. App. 3d 277, 281, 462 N.E.2d 794.

With respect to the issue of whether Jadczak was a "permissive user" within the policy terms, the uninsured-motorists provisions of the policy describe an "insured automobile" as "(a) an owned automobile provided the use thereof is by or with the permission of the named insured." The trial court stated that the Honda was "owned" only because of the policy definitions, but that the evidence did not clearly disclose that the car was owned by either of the Cayers. It also noted that if the car were so owned, implicit permission was given by Ruth Cayer to George Cayer to drive it. The trial court's findings on this issue are confusing. It appears that the court found that the Honda was owned by Ruth Cayer for purposes of policy coverage, while at the same time, the car was not owned by her for the purpose of permission to use it.

■ ■ However, Illinois law is clear that ownership for insurance purposes is not governed by the actual transfer of title but, rather, is controlled by the intent of the parties. (*Country Mutual Insurance Co. v. Aetna Life & Casualty Insurance Co.* (1979), 69 Ill. App. 3d 764, 767-68, 387 N.E.2d 1037.) In the present case, there is no dispute that George Cayer intended to purchase the car for his wife and that insurance was obtained for the car, one-third of the purchase price was paid, and repairs were being made at George Cayer's request. Under these circumstances, it is illogical to say that the car is owned as defined by one part of the policy, but is not owned under the permissive-use portion of the same policy. Accordingly, as a matter of law, the Honda was an owned vehicle for all matters arising under the policy. As such, the "initial permission" rule applies to the vehicle.

■ The initial permission rule holds that once permission to drive the vehicle has been granted to a first permittee, a further grant of permission to a second user need not be shown; the second driver is covered unless theft or conversion is indicated. (*Western States Mutual Insurance Co. v. Verucchi* (1977), 66 Ill. 2d 527, 531, 363 N.E.2d 826; see also *Milbank Mutual Insurance Co. v. U.S. Fidelity & Guaranty Co.* (Minn. 1983), 332 N.W.2d 160.) The present record indicates that, at the very least, George Cayer had implied permission from his wife to drive the Honda. Therefore, applying the initial permission rule, Jadczak was a permissive user and was covered under Ruth Cayer's policy.

■ Modern argues that the cancellation of the policy was effective since it was requested by the insured, Ruth Cayer. Recently, the

Illinois Supreme Court in *Copley v. Pekin Insurance Co.* (1986), 111 Ill. 2d 76, 86, 488 N.E.2d 1004, stated that an insurance policy may be cancelled by mutual consent of the insured and insurer. However, the cancellation in *Copley* was effected before the property loss occurred. It is the law in this State that where third-party rights of injured persons are involved, strict compliance by the insurer with the applicable statutes or by the policy terms is required. (*Smith v. Richard* (1985), 134 Ill. App. 3d 378, 383, 480 N.E.2d 859.) Modern's policy incorporated the law of Michigan regarding cancellation which requires an insurer to send written notice of cancellation by certified mail. Moreover, Modern's reliance on the fact that the insured, not the insurer, cancelled is without merit since the policy provides that an insured may cancel by mailing written notice to the company stating "when thereafter the cancellation shall be effective." There was no written notice by Ruth Cayer in accordance with the policy or Michigan law. It is almost universal that an insurance liability policy cannot be cancelled *ab initio* or rescinded after an accident occurs giving rise to third-party rights. (*Detroit Automobile Inter-Insurance Exchange v. Ayvazian* (1975), 62 Mich. App. 94, 233 N.W.2d 200 (insurer's liability becomes absolute upon occurrence of injury, thereafter precluding any cancellation by agreement between insurer and insured); *Reagor v. Travelers Insurance Co.* (1980), 92 Ill. App. 3d 99, 103, 415 N.E.2d 512 (rights under a policy of injured third parties vest at the time of the occurrence); *Franklin v. Carpenter* (1976), 309 Minn. 419, 244 N.W.2d 492 (once rights of third parties arose after issuance of binder, the insurance contract could not be rescinded by the parties).) Thus, it is apparent that once third parties (here, plaintiffs) have been injured, no agreement between Ruth Cayer and Modern could operate to effectively cancel the policy.

Accordingly, for the above reasons, we affirm the trial court's entry of judgment for plaintiffs and against defendants George Cayer and Modern.

Affirmed.

SULLIVAN, P.J., and PINCHAM, J., concur.