**ST. PAUL SURPLUS LINES INSURANCE COMPANY, Plaintiff,**

v.

**DIVERSIFIED ATHLETIC SERVICES, d/b/a H. Julicher & Company, and Roger Lauritzen, Defendants.**■

No. 87 C 5041.

United States District Court, N.D. Illinois, E.D.

Jan. 19, 1989.

---

Thomas H. Hamilton, Katherine S. Dedrick, Keith L. Hunt, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for plaintiff.

J. Herbert Landon, Erica Tina Helfer, Landon & Wojteczko, Ltd., Donal Rendler–Kaplan, Martin Y. Joseph, Katz, Kaplan & Associates, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

The Court referred plaintiff's motion for summary judgment to Magistrate James T. Balog for a Report and Recommendation. Magistrate Balog recommended that the Court deny plaintiff's motion and find that plaintiff has a duty to defend under the insurance policy at issue. Pursuant to Fed. R.Civ.P. 72(b), plaintiff (hereinafter "St. Paul") filed specific written objections to the magistrate's report and defendants filed their response to these objections. Having considered the pleadings and all relevant submissions, the Court does not adopt Magistrate Balog's recommendation and now grants St. Paul's motion for summary judgment for the following reasons.

The pertinent factual details are set out in the magistrate's report and will not be repeated here except as necessary. One point of clarification that should be made at the outset is that St. Paul's action in this Court seeks a declaration that it has neither a duty to defend nor to indemnify under the insurance contract with defendants. Accordingly, this Court's entry of summary judgment for St. Paul's constitutes a determination in St. Paul's favor as to both issues.

This Court's inability to adopt the magistrate's report stems primarily from its dis-

agreement with his application of the governing principles of Pennsylvania law.[1] Under Pennsylvania law, an insurer has a duty to defend an insured until it can limit the potential scope of recovery against the insured to a claim that falls outside the coverage of the insurance policy. *Pacific Indemnity Co. v. Linn,* 766 F.2d 754, 760 (3d Cir.1985). "The obligation to defend is determined solely by the allegations of the complaint in the action." *Id.*[2]

The underlying complaint against the insured asserts the following damages:

1. Loss of use of the real property prepared for the use of the defective skating rink;

2. Money spent to maintain the defective rink, including the purchase of equipment;

3. Purchase price of the defective rink;

4. Money spent to prepare the site for installation of the rink;

5. Punitive damages.

Looking to the complaint, the magistrate identified what he deemed to be three claims potentially falling within the declaration of coverage: (1) loss of use of the site; (2) claims for the damage to the product itself; and (3) "damage to the site of the installation of the product." Report, at 7–8. The Court agrees that these are the only claims in the underlying complaint that are arguably covered.

Before considering the policy's terms, it should be noted that the policy is a standard contract developed by the insurance industry and known as the Comprehensive General Liability Policy (CGLP). *See* Note, *Liability Coverage for "Damages Because of Property Damage" Under the Comprehensive General Liability Policy,* 68 Minn. L.Rev. 795 (1984). As such, its terms have been the frequent subject of litigation. *See* Report, at 9–11.

For purposes of resolving this dispute, the contract has three relevant sets of provisions. The first is the declaration of coverage, which provides in pertinent part:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> bodily injury or
> property damage
>
> to which this insurance applies, caused by an occurrence....

The definitions constitute the second set of relevant provisions. In relevant part, they provide as follows:

---

**1.** In objecting to the magistrate's report, plaintiff argues that the magistrate erred in the choice of law analysis and that Illinois law governs the contract of insurance, citing, among other cases, *International Administrators v. Life Insurance Co. of North America,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985) ("Conflicts rules are appealed to only when a difference in law will make a difference to the outcome.... Hence on issues about which there is no disagreement among the contact states, we would apply the law of Illinois, the forum state."). The Court observes that the reported Illinois decisions construing choice of law issues in the insurance context appear to eschew the initial step of determining whether there is a conflict between the laws of the forum state and the foreign state. *See, e.g., Jadczak v. Modern Service Insurance Co., Inc.,* 151 Ill.App.3d 589, 104 Ill.Dec. 932, 503 N.E.2d 794 (1st Dist.1987). The Court believes that this reflects a desire to accord insurance contracts, which can be subject to litigation in multiple forums, the guarantee of construction under a single body of precedent. Accordingly, the Court concurs in the magistrate's reasoning concerning the choice of law issue.

In any event, the choice of law does not ultimately affect the outcome in this case, since the Court concludes that the Pennsylvania courts would adopt the majority view followed in Illinois, which finds no duty to defend or indemnify under the insurance contract at issue. *See Western Casualty & Surety Co. v. Brochu,* 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985). *Cf. McCorkle v. Firemen's Insurance Co.,* 678 F.Supp. 562 (W.D.Pa.1988).

**2.** Illinois law is to the same effect. *See, e.g., Eichelkraut & Sons v. Bituminous Casualty Corp.,* 166 Ill.App.3d 550, 117 Ill.Dec. 13, 15, 519 N.E.2d 1180, 1182 (1st Dist.1988); *Dreis & Krump Mfg. Co. v. Phoenix Ins. Co.,* 548 F.2d 681, 683 (7th Cir.1976).

Occurrence means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.

Property damage means (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.

The policy exceptions constitute the third set of relevant provisions. The policy provides that "this insurance does not apply":

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner.

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from

(1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or

(2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;

but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured.

(n) to property damage to the named insured's products arising out of such products or any part of such products.

Under accepted principles of contract construction, these provisions interact as follows. A risk is covered if it falls within the general declaration of coverage, looking, of course, to the definitions to give meaning to the terms of the general declaration. Once a risk falls within the general declaration, however, it may then be specifically removed from coverage by one of the exclusions. Each exclusion applies only against the general declaration of coverage, operating independently of every other exclusion. *See Western Casualty & Surety Co. v. Brochu*, 105 Ill.2d 486, 86 Ill.Dec. 493, 498, 475 N.E.2d 872, 877 (1985). Moreover, an exception to an exclusion, such as the one found in exclusion (a), does not create coverage; only the general declaration of coverage can do that. *See McCorkle v. Firemen's Insurance Co.*, 678 F.Supp. 562, 564 (W.D.Pa.1988). Accordingly, even though an exception to an exclusion reserves coverage which the exclusion otherwise carves out of the general declaration, coverage may yet be negated by the independent operation of another exclusion. *See Western Casualty*, 86 Ill. Dec. at 498, 475 N.E.2d at 877.

■ The Court now considers the claims identified by the magistrate as potentially falling within the policy's coverage. Regarding (3)—damage to the site—the underlying complaint against the insured does not allege damage to the site other than through loss of use, which is specifically averred. Employing the rule that the duty to defend must be determined from the face of the underlying complaint, the Court must disagree with the Magistrate's conclusion. The complaint simply does not allege physical injury to the property. Furthermore, even construing the complaint as asserting a claim for damage to the plaintiff's property, coverage is excluded by the plain language of the policy, which defines property damage as "physical injury to or destruction of tangible property." Construction of a potentially useful concrete slab does not appear to constitute "physical injury" or "destruction" as contemplated by the general declaration of coverage.

Although the report is unclear on this point, the Magistrate may have assumed that installation of the concrete slab dam-

aged the property by reducing its property value. But plaintiff has not pleaded diminution in property value, and it is quite possible that he considers his property to be increased in value, since he presumably could use the slab as the foundation for a conventional skating rink. Moreover, even if the slab did diminish the value of plaintiff's property, this would be an intangible injury, as opposed to a "physical injury," as required by the policy. Accordingly, the Court determines that there is no claim for damage to the site of installation that could create a right of indemnification under the general declaration of coverage.

■■■ By way of contrast, the other two claims identified by the magistrate would appear to fall within the general declaration of coverage. However, each of these claims is then specifically excluded from coverage by the policy's list of exclusions. As for (2)—damage to the product itself—this is specifically foreclosed by exclusion (n). Similarly, the loss of use of the real property is specifically excluded from coverage by exclusion (m), which removes coverage for "loss of use of tangible property which has not been physically injured or destroyed resulting from ... failure of the named insured's products ... to meet the level of performance, quality, fitness or durability warranted or represented." [3]

As the magistrate recognized, the policy does not cover the underlying claims if exclusions (m) and (n) apply. Report, at 8. The magistrate, however, determined that a Pennsylvania court would find these exclusions ambiguous when read in conjunction with exclusion (a); applying the rule that ambiguities are to be resolved against the insurer, the magistrate found at least a

duty to defend under the policy. In so concluding, the magistrate believed that the Pennsylvania courts would adopt what is a minority position among the state courts, and rejected the contrary conclusion of the United States District Court for the Western District of Pennsylvania. *See McCorkle v. Firemen's Insurance Co.,* 678 F.Supp. 562 (W.D.Pa.1988). The magistrate's reasoning is set out in his report at pp. 8–13.

This Court cannot agree with the suggested analysis because its own examination of the cases persuades it that the Pennsylvania Supreme Court would follow the majority position with respect to this issue. The courts following the minority position have tended to emphasize the duty of insurance companies to write policies easily understandable by the average layman untrained in the law. A representative sample of this reasoning is contained in *Baybutt Construction Corp. v. Commercial Union Insurance,* 455 A.2d 914 (Me.1983):

> The question in this case is whether an ordinary person in the shoes of the plaintiff construction company would understand that the policy did not cover claims such as those pressed against it by the City of Waterville. We believe not. The objectively reasonable expectations of an insured will be honored even though painstaking study of the policy provisions would have negated those expectations.

*Id.* at 921. This emphasis on the "objectively reasonable expectations of the insured," regardless of the express language of the policy, should be contrasted with the Pennsylvania Supreme Court's reasoning in *Standard Venetian Blind Co. v. Ameri-*

---

3. Relying upon an accession theory, defendants argue that once the rink was installed, its removal constituted property damage within the terms of the policy. They cite *Bowman Steel Corp. v. Lumbermens Mutual Casualty Co.,* 364 F.2d 246 (3d Cir.1966); *Pittsburgh Plate Glass Co. v. Fidelity & Casualty Co. of New York,* 281 F.2d 538 (3d Cir.1960); and *Pittsburgh Corning Corp. v. Travelers Indemnity,* No. 84–3985 (E.D. Pa.1988) [1988 WL 5291] [1988 U.S. Dist. LEXIS 680]. The Court finds these cases distinguishable on their facts, since the underlying complaint in this case does not allege diminution in property value or physical damage to the plaintiff's land. Moreover, diminution in property value is an intangible injury, rather than the "physical injury ... or destruction" covered under the policy's definition of property damage. Furthermore, to the extent that the defendants rely upon an accession theory to assert damages to the rink itself, their argument is foreclosed by the language of exclusion (n), which removes coverage for "property damage to the named insured's products arising out of such products or any part of such products."

*can Empire Insurance*, 503 Pa. 300, 469 A.2d 563 (1983). *Standard Venetian* dealt with the same standard policy found here, and an insured construction company's claim that it neither knew of nor understood the import of exclusion (n) and another exclusion on the contours of its insurance coverage. In response to this argument, the court stated:

> As found by the court of common pleas, the exclusions at issue are 'plain and free of ambiguity,' and could have been readily comprehended by Mr. Morris had he chosen to read them.... We hold only that where, as here, the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the consequences of that limitation by proof that he failed to read the limitation or that he did not understand it.

469 A.2d at 566–67.

Thus, while the Pennsylvania Supreme Court has yet to construe exclusions (a), (m) and (n) together, its decision in *Standard Venetian* rejects the underlying premises of the minority position. In other words, it would appear that the Pennsylvania court follows the majority view that policy provisions are enforceable, even if the average layman or businessman might find them difficult to understand. This aspect of *Standard Venetian* calls into question the magistrate's reasoning that "[legal] expertise should not be required of the insured" under Pennsylvania law. Report, at 13. Accordingly, the Court concludes that the Pennsylvania Supreme Court, if faced with the issues presented in this case, would adopt the majority view as reflected in *Brochu, McCorkle* and the cases cited on pp. 10–11 of the magistrate's report.[4]

Consequently, the Court must conclude that the policy does not extend coverage for the damages asserted in the underlying complaint. Since there is no duty to indemnify, there is no duty to defend.

WHEREFORE, the Court declines to adopt Magistrate Balog's Report and Recommendation. It concludes that St. Paul has neither a duty to defend nor to indemnify defendant under the insurance policy at issue. The Court now enters summary judgment in favor of plaintiff and against defendants.

## APPENDIX

### REPORT AND RECOMMENDATION

JAMES T. BALOG, United States Magistrate.

Before the court is the motion of plaintiff St. Paul Surplus Lines Insurance Company ("St. Paul") for summary judgment in the instant case.

This action arises out of an insurance contract under which St. Paul issued a Comprehensive Liability Policy to defendant Diversified Athletic, d/b/a H. Julicher & Company ("Diversified") for the period of April 6, 1983 to April 6, 1984. During that time, Diversified contracted with Roger Lauritzen to install a synthetic ice surface at Lauritzen's home in Lake Forest, Illinois. Lauritzen claims that defects in the surface became apparent in September of 1983. As a result, Lauritzen sued Diversified under various contract, warranty, and misrepresentation theories. The complaint seeks damages for the contract price of the product, the cost of preparation of the site for installation of the product, the expenditures made in maintenance of the product, and loss of the use of the portion of the yard where the product was installed.

Pursuant to the insurance policy and subject to a reservation of rights letter, St. Paul is defending Diversified in the Lauritzen case. St. Paul has filed the instant action seeking a declaratory judgment as to its duty to defend under the policy for Lauritzen's claims. St. Paul argues that the policy in question covers only damages resulting from bodily injury or property damage, and does not, therefore, cover the

---

4. The Court finds this result particularly appropriate since in its own view, the majority approach is better reasoned.

claims made by Lauritzen which are for economic loss. In the alternative, St. Paul contends that even if the claims are characterized as seeking redress for property damage, Lauritzen's claims are excluded from coverage by the policy. St. Paul cites two exclusions, (m) and (n), of the policy, which provide that the policy in question does not apply:

(m) To loss of use of tangible property which has not been physically injured or destroyed resulting from (1) a delay in or lack of performance by or on behalf of the named insured or any contract of agreement, or (2) the failure of the named insured's products or work performed by or on behalf of the named insured;

\* \* \* \* \* \*

(n) To property damage to the named insured's products arising out of such products or any part of such products;

\* \* \* \* \* \*

(Complaint for Declaratory Judgment, Ex. A, "Exclusions"). In addition, St. Paul notes that the policy also excludes coverage for punitive damages. (Complaint for Declaratory Judgment, Ex. A, "Special Provisions Endorsement.") [1]

Diversified contends that the policy in question affords coverage for Lauritzen's claims because there has been property damage. Diversified also argues that a third policy exclusion, exclusion (a), makes the policy ambiguous as to coverage for Lauritzen's claims. The exclusion indicates that the policy does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

\* \* \* \* \* \*

---

1. The parties do not dispute that punitive damages are excluded from coverage under the policy in question. This does not resolve the issue of St. Paul's duty to defend Diversified. *Pacific*

(Complaint for Declaratory Judgment, Ex. A, "Exclusions"). Because this exclusion indicates that coverage is provided for claims based on fitness and workmanship, contrary to exclusions (m) and (n), Diversified argues that the policy is ambiguous and must be construed against St. Paul to provide coverage for the Lauritzen claims. The question for summary judgment, then, is whether St. Paul has a duty to defend Diversified against the claims brought in the Lauritzen case.

Under the Federal Rules of Civil Procedure, summary judgment is available only if the record shows that "there is no genuine issue as to a material fact and that the moving party is entitled to a summary judgment as a matter of law." Fed.R. Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986). In determining whether summary judgment is appropriate, a court should consider whether a fair-minded jury could return a verdict for the movant based on the undisputed facts. *Id.*

Before this court can address the issue presented for summary, it must address the parties' dispute over the law to be applied to the issue. As a federal court sitting in a diversity case, the court must begin by applying the conflict-of-law rules of the forum state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941); *DeValk Lincoln Mercury Inc. v. Ford Motor Co.*, 811 F.2d 326 (7th Cir.1987). In this case, the court looks to Illinois' conflict-of-law principles to determine the proper law to apply to this insurance contract question.

The Illinois conflict-of-law principles applicable to contract questions appear to be in a state of flux. One view, which has been followed by district courts in this circuit, is simply that the laws of the state where the insurance policy is executed are applied to the contract. *Home Ins. Co. v. Service America Corp.*, 662 F.Supp. 964, 966 (N.D.Ill.1987); *Home Ins. Co. v. Service America Corp.* 654 F.Supp. 157, 159

*Indemnity Co. v. Linn,* 766 F.2d 754 (3rd Cir. 1985); *United Services Auto. Ass'n v. Glitzky,* 517 A.2d 982 (Pa.Super.1986).

(N.D.Ill.1987), *citing Gray v. Penn Mutual Life Ins. Co.*, 5 Ill.App.2d 541, 126 N.E.2d 409 (1955); *Jadczak v. Modern Service Ins. Co., Inc.*, 151 Ill.App.3d 589, 503 N.E.2d 794, 797 (1st Dist.1987). A second, more complex view holds that the law of the place of the execution and performance of the contract is generally applied. *Jay v. United Defense Industries, Inc.*, 162 Ill. App.3d 1080, 516 N.E.2d 434, 437 (1st Dist. 1987); *Boise Cascade Home & Land v. Utilities, Inc.*, 127 Ill.App.3d 4, 468 N.E.2d 442, 448 (1st. Dist.1984). Exceptions to this rule apply when performance and execution occur in different states, in which case the law of the place of performance governs, and when performance occurs in more than one state, in which case the law of the place of execution controls. *Boise Cascade*, 468 N.E.2d at 448. Finally, a third approach can be found in an apparent trend toward application of the most significant contacts test of the Restatement (Second) of Conflict of Laws. *Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1108–1109 (7th Cir.1987); *Illinois Tool Works v. Sierracin Corp.*, 134 Ill.App.3d 63, 479 N.E.2d 1046, 1050–1051 (1st Dist.1985); *Boise Cascade*, 468 N.E.2d at 449; *Champagnie v. W.E. O'Neil Construction Co.*, 77 Ill. App.3d 136, 395 N.E. 990, 996 (1st Dist. 1979). In *Boise Cascade,* the Illinois court noted that resort to the significant contracts test was necessary in situations where performance and execution occurred in more than one state, but expressed approval for application of the test in all situations. 468 N.E.2d at 448–449. The Court of Appeals for the Seventh Circuit has observed the trend toward this approach and applied it in *Palmer,* despite the fact that when the Illinois Supreme Court last announced the appropriate choice-of-law rule for contracts cases, it favored application of the law of the state where the contract is executed. 823 F.2d at 1109; *cf. Oakes v. Chicago Fire Brick Co.*, 388 Ill. 474, 58 N.E.2d 460 (1944). The decision of the appellate court for this circuit, in the face of the rather confusing state of the law in Illinois, must govern the decision of this court. *Palmer*, 823 F.2d at 1109, *citing, Florida Risk Planning Con-*

*sultants, Ins. v. Transport Life Ins. Co.*, 732 F.2d 593 (7th Cir.1984); *see also Palmer, Id.* at 1113 (concurring opinion).

The Restatement provides two possible approaches, one applying generally to contracts and another applying more specifically to insurance contracts. Under Section 193, the rights created under an insurance contract are determined by the local law of the state which the parties understood was to be the principal location of the insured risk. Restatement (Second) of Conflict of Laws. § 193 (1971). When there is no principal location of risk, general contract principles will apply. *Id.* comment (a). These principles involve consideration of the following factors in determining the applicable law:

- (a) the place of contracting,
- (b) the place of negotiation of the contract,
- (c) the place of performance,
- (d) the location of the subject matter of the contract, and
- (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws, § 188 (1971).

Applying these principles to the instant case, it is not clear whether the parties understood there to be a principal location of risk. The policy at issue is a general liability policy for Diversified's business, which is principally located in Pennsylvania. The policy does not address a principal location of risk, however, and was apparently designed to provide coverage without regard to location of risks. The fact that the specific risk which forms the basis for the underlying lawsuit in this case happened to be in Illinois would seem to be of little consequence. *See, Sondefer Oil and Gas v. ALG Oil Rig of Texas, Inc.*, 846 F.2d 319, 324 (5th Cir.1988), *cf. Baybutt Const. Corp. v. Commercial Union Ins.*, 455 A.2d 914, 919 (Me.1983) (court applied law of the state where the specific risk was realized in light of the clear intention of the policy to afford coverage in that state and two others). Thus, this court will look to

the factors prescribed by Section 188 to determine the applicable law.

In this case, the place of contracting is Pennsylvania, where Diversified and an agent for St. Paul executed the contract. The place of performance of the contract would appear to be Pennsylvania, Diversified's principal place of business. Pennsylvania would also seem to be the location of the subject matter of the contract, since it is Diversified's principal place of business, although the specific subject matter, or risk, in this instance happened to be in Illinois. Finally, St. Paul's domicile is Minnesota, while Diversified's domicile is, once again, Pennsylvania. In the instant case, then, Pennsylvania has the most significant contacts with the contract in question and therefore, Pennsylvania law will be applied.

St. Paul's initial argument for summary judgment is that, regardless of any exclusions, the policy in question does not cover the Lauritzen claims. Those claims seek recovery for the cost of the Lenn-ice product, the cost of preparing the site for installation, the cost of a maintenance machine and the loss of use of the site. St. Paul contends that because the policy limits coverage to bodily injury and property damage, it does not apply to the Lauritzen claims. These arguments must be considered in light of Pennsylvania law, which holds that an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may *potentially* come within the insured's coverage. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3rd Cir.1985), *citing Cadwallader v. New Amsterdam Casualty Co.*, 396 Pa. 582, 152 A.2d 484 (1959). With this in mind, St. Paul's initial argument based on the property damage clause fails.

The Lauritzen claims in this case are, at least potentially, claims for property damage under Pennsylvania law. The claim for loss of use of the site most clearly comes under the coverage for property damage. Once a defective product is placed on property, it is "no longer justifiable as a separate entity but is intended to and does become part of the finished prod-

uct." *Pittsburgh Corning Corp. v. The Travelers Indemnity Co.*, No. 84–3985 (E.D.Pa. Jan. 21, 1988), 1988 U.S.Dist. LEXIS 680, *quoting Bowman Steel Corp. v. Lumberman's Mutual Casualty Co.*, 386 F.2d 246, 249 (3rd. Cir.1966). The claim for the damage to the product itself due to the defective nature of the product may constitute property damage. *Pittsburgh Plate Glass Co. v. Fidelity and Casualty Co.*, 281 F.2d 538, 541 (3rd Cir. 1960). The costs of preparation of the site and purchase of a maintenance machine are, on the other hand, difficult to characterize as property damage. As a general rule, however, where there is some damage to property other than that which consists of the insured's product, there is covered property damage. *Beckwith Machinery Co. v. Travelers Indem. Co.*, 638 F.Supp. 1179, 1185 (W.D.Pa.1986). In this case, the Lauritzen complaint obviously cites damage to the site of the installation of the product. The duty to defend remains with St. Paul until it can confine the possibility of recovery to claims outside the policy's coverage. *Pacific Indemnity*, 766 F.2d at 760; *United Services Auto. Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa.Super.1986). Consequently, St. Paul is not entitled to summary judgment absolving it of its duty to defend Diversified on the basis of the property damage clause.

St. Paul's secondary argument is based on the exclusions (m) and (n) of the policy, which purport to eliminate coverage for loss of use of property due to performance of the insured or quality of the product, and for damage to the product arising out of the product itself. If these exclusions are applicable, the policy does not provide coverage for the Lauritzen claims, which are based on breach of contract and warranty theories. Diversified contends that a third exclusion serves to create an ambiguity in the policy as to coverage, and that therefore, there is coverage for the Lauritzen claims. The exclusion, exclusion (a), states that it does not exclude coverage for claims based upon a warranty of fitnes or workmanship.

To address these arguments, the court must resort to the principles governing the

interpretation of insurance contracts under Pennsylvania law. Under these principles, the court must determine the intent of the parties as manifested in the language of the contract. *Standard Venetian Blind Co. v. Am. Empire Ins.,* 469 A.2d 563, 566 (Pa.1983). If the court finds a provision of a policy to be ambiguous, the court must construe that provision in favor of the insured and against the insurer. *Id.* The court must give effect to the language of the contract, however, where that language is clear and unambiguous. *Id.*

While exclusions such as exclusions (a), (m) and (n) are rather common in general liability policies, they have apparently never been construed together in Pennsylvania. *See, Venetian Blind,* 469 A.2d at 569 n. 6 (concurring opinion); *McCorkle v. Firemen's Ins. Co. of Newark, N.J.,* 678 F.Supp. 562, 563 (W.D.Pa.1988). Consequently, this court's duty is to predict what rule the Pennsylvania courts would adopt if faced with this question. *Johnson v. Jack B. Kelley, Inc.,* 669 F.Supp. 191, 193 (N.D. Ill.1987), *citing Harris v. Karri-on Campers, Inc.,* 640 F.2d 65, 68 (7th Cir.1981); *see also Keene Corp. v. Insurance Co. of North America,* 597 F.2d 946, 949 (3rd Cir.1984). In so doing, this court must consider all the data that the Pennsylvania court would consider in reaching its decision. *Karri-on,* 640 F.2d at 68.

Consideration of that data leads to the holding in *McCorkle,* which regarded an identical exclusion (a) while seeking to predict Pennsylvania law. 678 F.Supp. at 563. There, the district court found the exclusion to be unambiguous—in itself and as against other exclusions in the policy. *Id.* at 564. In finding exclusion (a) to be unambiguous on its own, the court cited two decisions, one a Pennsylvania decision and the other a federal district court decision, for the proposition that an exception to an exclusion cannot have the effect of providing coverage where none exists. *Id., citing Penn. Maid Hosiery Mills, Inc. v. Affiliated FM Ins. Co.,* 12 Pa.D. & C.3d 463 (1979); *Young v. U.S. Fidelity & Guaranty,* No. 86-6832 (E.D.Pa. July 29, 1987) 1987 U.S.Dist. LEXIS 6797. Thus, it would appear that, under Pennsylvania law, when a policy exclusion contains an exception, the exception's effect is merely to restrict the scope of the exclusion and allow coverage only when it is provided elsewhere in the policy.

Finding that exclusion (a) could not be a *source* of coverage, the *McCorkle* court went on to consider whether (a) could be characterized as ambiguous in light of other, seemingly contradictory exclusions. There, as here, the court could find no guidance in Pennsylvania law, and resorted to the law of other jurisdictions. The *McCorkle* court relied on New Jersey and New York decisions for the proposition that a policy exclusion should not be analyzed against other exclusions. 678 F.Supp. at 564, *citing, Zandiri Construction Co. v. Firemen's Ins. Co. of Newark,* 81 A.D.2d 106, 440 N.Y.S.2d 353, *aff'd* 54 N.Y.2d 999, 446 N.Y.S.2d 45, 430 N.G.2d 922 (1981); *Weedo v. Stone–E–Brick, Inc.,* 81 N.J. 233, 1405 A.2d 788 (1979). Consequently, the *McCorkle* court found that the insurer had no duty to defend the insured under the policy.

The *McCorkle* decision, being a decision of a district court in another circuit, is not binding on this court. *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1124 (7th Cir.1987). This court must assume, however, that the *McCorkle* court, sitting in the Western District of Pennsylvania, is more familiar with the application of Pennsylvania law than this court. As such, this court is comfortable in following the *McCorkle* decision insofar as it found exclusion (a) did not provide coverage where none exists because it extrapolated upon Pennsylvania law to do so. In finding that exclusion (a) was unambiguous in the face of other, seemingly contradictory exclusions, the *McCorkle* court resorted to other jurisdictions. This court need not accept that holding uncritically. *Keene Corp. v. Insurance Co. of North America,* 597 F.Supp. 946, 948 (D.D.C.1985); *In Re Korean Airlines Disaster of Sept. 1, 1983,* 664 F.Supp. 1478, 1481 (D.D.C.1986).

The construction of an exclusion such as exclusion (a) with additional, seemingly contradictory exclusions such as (m) and (n)

is not an unfamiliar task in jurisdictions other than Pennsylvania. A substantial majority of courts have found no ambiguity exists among such exclusions. *See, G.L. Shaw Bldrs. v. State Auto. Mut. Ins.*, 182 Ga.App. 220, 325 S.E.2d 130 (Ga.App.1987); *Vari Builders, Inc. v. U.S. Fidelity and Guar. Co.*, 523 A.2d 549 (Del.Super.1986); *Western Cas. & Sur. Co. v. Brochu*, 105 Ill.2d 486, 475 N.E.2d 872 (1985); *Sturla, Inc. v. Firemen's Fund Inc., Co.*, 684 P.2d 960 (Hawaii 1984); *Bond Bros. Inc. v. Robinson*, 393 Mass. 546, 471 N.E.2d 1332 (1984); *Nationwide Mut. Ins. Co. v. Wenger*, 222 Va. 263, 278 S.E.2d 874 (1981); *Helfeldt v. Robinson*, 290 S.E.2d 896 (W.Va.1981); *LaMarche v. Shebly Mut. Ins. Co.*, 390 So.2d 325 (Fla.1980); *Indiana Ins. Co. v. DeZutti*, 408 N.E.2d 1275 (Ind. 1980); *Vernon Williams & Son Constr., Inc. v. Continental Ins. Co.*, 591 S.W.2d 760 (Tenn.1979); *Weedo, supra; Haugan v. Home Indemnity Co.*, 86 S.D. 406, 197 N.W.2d 18 (1972). The minority opinion finds that such exclusions, when read together, are confusing and must be construed against the insurer. *See, EMCAS-CO Ins. Co. v. L & M Development, Inc.*, 372 N.W.2d 908 (N.D.1985); *Baybutt Constr. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914 (Me.1983); *McRaven v. F-Stop Photo Labs, Inc.*, 660 S.W.2d 459 (Mo.Ct.App.1983); *Fresard v. Michigan Millers Mut. Ins. Co.*, 97 Mich.App. 584, 296 N.W.2d 112 (Mich.App.1980), *aff'd* 414 Mich. 686, 327 N.W.2d 286 (1982); *Commercial Union Assur. Companies v. Gollan*, 394 A.2d 839 (N.H.1978); *Federal Insurance Company v. P.A.T. Homes, Inc.*, 113 Ariz. 136, 547 P.2d 1050 (1096). Rather than uncritically follow the majority, this court must examine the reasoning of both views and discern which is better suited to the instant case.

The minority view is perhaps best represented by the Supreme Court of Maine in *Baybutt*. The *Baybutt* court noted that (m) and (n) type exclusions, when standing alone, were unambiguous and appeared to exclude coverage to an insured for a breach of contract or warranty based on faulty workmanship or materials. 455 A.2d at 920. The court further noted, however, than when such exclusions are considered with the exception to exclusion (a), which is identical to the exception in the instant case, the correlative effect is a clouding of meaning and an internal inconsistency. *Id.* The court stated that the exception to exclusion (a) cannot be interpreted as granting coverage for breach of warranty, or quality of products or workmanship and could reasonably be interpreted as merely a limit on the scope of exclusion (a), but that even in doing so, "it creates the appearance that the coverage affirmatively preserved by the exception from the stated exclusion is to be retained as part and parcel of the general liability coverage provided by the policy." *Id.* Consequently, the *Baybutt* court found the policy in question to be ambiguous, and resolved the doubt in favor of finding that the insurer had a duty to defend the insured. *Id.* at 922.

The genesis of the majority view can be found in the *Haugan* decision and, to a greater extent, the *Weedo* decision. The *Haugan* court based its decision on the premise that the exception to exclusion (a) could not grant coverage for warranty claims and is subject to all other exclusions. 197 N.W.2d at 22. That court felt the sum of the exception and the seemingly contradictory exclusion is "that property damage claims of third persons resulting from the insured's breach of warranty are covered unless the claimed loss is confined to the insured's work product." *Id.* The *Weedo* court accepted this proposition, and further addressed the insured's arguments that the policy was, nevertheless, ambiguous. Such an argument, the court stated, ignored the principle that exclusions should be read independently of one another. 405 A.2d at 795. The court cited with approval, the construction rule that exclusions could not be viewed as inconsistent with one another because they bear no relationship with one another, and have no cumulative affect. *Id.* Accordingly, the *Weedo* court found no ambiguity and found the insurer had no duty to defend the insured. *Id.* at 796.

In considering the instant case, this court cannot deny that exclusion (a) and its exception can be harmonized with exclusions (m) and (n). It would appear from *Weedo* and its progeny, however, that such harmony requires a good deal of legal gymnastics. One exclusion specifically reserves breach of warranty coverage, while others negate that coverage. The *Weedo* court addressed this inconsistency by stating that the exception to exclusion (a) is subject to, and must be considered with, all other exclusions. 405 A.2d at 795. Yet, the same court rejected the insured's argument that the inconsistency could reasonably produce confusion by stating that exclusions must be read separately and not cumulatively. *Id.* While the court's reasoning is sound insofar as its conclusion amounts to a holding that an exclusion is controlling over an exception but not another exclusion, its decision that the policy is not ambiguously worded is questionable. This court can agree with the *Weedo* court's interpretation of such policies and their attendant exclusions, but that is not the issue presented for summary judgment in the instant case. This court must determine whether the policy and its exclusions, whatever their ultimate interpretation, can be regarded as ambiguous.

With this in mind, the court feels that the policy and its attendant exclusions are indeed ambiguous. When read together, the exclusions are simply confusing. Even if the reader limits the application of the exception in question to exclusion (a), and applies exclusions (m) and (n) to negate the coverage reserved by the exception, questions remain. In view of (m) and (n), the exception to (a) seems to be superfluous—not a construction favored by law. It is true that this question is answered by *Weedo* and *Haugan*, but not without resort to legal expertise. Such expertise should not be required of the insured, especially when the insurer may word its policy more precisely. *See, Weedo,* 405 A.2d at 798 (dissenting opinion). Because an ambiguity must be construed against the insurer under Pennsylvania law, St. Paul's motion for summary judgment should be denied and it should be required to defend Diversified under the policy.

Even if the *Weedo* courts assessment were accepted, St. Paul would still have a duty to defend Diversified under the policy. The *Weedo* court faced a situation where the only claims made were based on damage or poor quality of the insured's product. Finding no duty to defend, the *Weedo* court interpreted the subject exclusions as resulting in coverage for breach of warranty claims for damages other than to the insured's product. As there were no such claims presented in *Weedo,* there was no duty to defend. In the instant case, the Lauritzen complaint makes claims for damages other than those to the product itself —loss of use of the site of the product, for example. St. Paul retains its duty to defend until it can confine the possibility of recovery to claims outside the policy's coverage. *Pacific Indemnity,* 766 F.2d at 760; *Elitzky,* 517 A.2d at 985. Thus, even if the view of *Weedo* and its progeny were accepted by this court, St. Paul could not seek refuge from its duty to defend in the majority view.

For these reasons, it is recommended that the plaintiff's motion for summary judgment be DENIED.