FANNIE ALLEN, as Adm'r of the Estate of James Allen, Deceased, Plaintiff-Appellant and Cross-Appellee, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant and Counterplaintiff and Counterdefendant-Appellee and Cross-Appellant (James Lee Allen, Defendant and Counterdefendant and Counterplaintiff).

First District (3rd Division)   No. 1—89—3087

Opinion filed May 15, 1991.

Topper & Weiss, Ltd., of Chicago (Barry Weiss, of counsel), for appellant.

Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago (Frank C. Stevens and James J. Hoffnagle, of counsel), for appellee.

JUSTICE WHITE delivered the opinion of the court:

This appeal is from declaratory judgment for defendant State Farm Mutual Automobile Insurance Company (State Farm) in an action on a policy. The underlying dispute concerns an Arkansas collision, in which an insured Indiana passenger is alleged to have been fatally injured in his own car while his adult Illinois son was driving. We affirm.

## I. FACTS

On April 18, 1987, James Allen (the father) resided in Gary, Indiana, and James Lee Allen (the son) resided in Chicago. On that date, the father drove in his own car to the son's home in order to pick up the son for an intended trip to Mississippi.

The son took the wheel, and later on that same date the car collided with another vehicle in Arkansas while the son was driving in an allegedly negligent manner. The collision injured the father, who is alleged to have died as a result in a Tennessee hospital on May 16, 1987. The son still resides in Illinois.

At the time of the accident, the father owned a vehicle insurance policy (the policy) insuring the car involved and providing liability and uninsured motor vehicle coverage. The son did not own a motor vehicle and was not covered under any other vehicle insurance policy.

## II. PROCEDURAL HISTORY

The father's widow, 'Fannie Allen (plaintiff), was named administrator of his estate by an Indiana court. Plaintiff as administrator then filed suit against the son in the circuit court of Cook County. That suit is not directly part of this appeal.

On June 10, 1988, plaintiff as administratrix filed suit for declaratory judgment against defendant State Farm in the circuit court of Cook County. That suit is the subject of this appeal. It was based in relevant part on the policy.

The complaint alleged that the policy excluded liability coverage for bodily injury to an insured and that the father's medical expenses amounted to more than $82,000. The complaint sought a declaration that, by reason of the liability exclusion and the father's injuries and death, State Farm owed plaintiff the $50,000 limit of uninsured motor vehicle coverage that the policy provided. (State Farm had paid plaintiff the $25,000 limit of medical-payments coverage under the policy.)

On August 11, 1988, the circuit court granted plaintiff leave to amend her complaint by naming the son as an additional defendant. The son is not a party to this appeal.

By leave of court, State Farm filed a counterclaim against the son on March 29, 1989, seeking a declaration that under the policy the son had no liability coverage for the father's injuries and that State Farm had no duty to defend or indemnify the son on account of the accident.

On August 18, 1989, State Farm filed a motion for summary judgment in its favor on the counterclaim and the amended complaint. Also on that date, by leave of court, plaintiff filed her second amended complaint, adding a claim that, because of an Arkansas compulsory-insurance statute, State Farm owed liability coverage as a result of out-of-State coverage provisions in the policy. Later, plaintiff filed her cross-motion for summary judgment on her out-of-State coverage claim.

Eventually, after answering State Farm's counterclaim, the son filed his own counterclaim against State Farm, seeking a declaration that State Farm owed him liability coverage and a defense, was guilty of an improper claims practice, and owed him attorney fees and costs. Later, by leave of court, State Farm answered the son's counterclaim and amended its summary judgment motion to stand also as a motion for summary judgment on that counterclaim.

Relying on Indiana law, the circuit court granted State Farm's summary judgment motion and denied plaintiff's cross-motion. The judgment declared that the policy provided no liability or uninsured-motorist coverage for any injuries or death sustained by the father as a result of the collision.

Plaintiff now appeals from entry of summary judgment for State Farm and denial of summary judgment for her.

### III. POLICY PROVISIONS

The policy effectively defined both the father and the son as "insured," and it defined "bodily injury" to include death.

Section I of the policy, pertaining to liability coverage (Coverage A), obliged State Farm to pay "damages which an insured becomes legally liable to pay because of *** bodily injury to others." (Emphasis omitted.) However, in subparagraph 2(c) under the heading "When Coverage A Does Not Apply," section I also stated that there was no liability coverage for bodily injury to "ANY INSURED OR ANY MEMBER OF AN INSURED'S FAMILY RESIDING IN THE INSURED'S HOUSEHOLD." (Italics and boldface omitted.)

Regarding out-of-State coverage, section I also stated that, if an insured under the liability coverage were in another State and, as a nonresident, became subject to that State's motor vehicle compulsory insurance law, the policy would be interpreted to give the coverage required by the law, and "the coverage so given replaces any coverage in this policy to the extent required by the law for the insured's operation, maintenance or use of a car insured under this policy." (Emphasis omitted.)

The policy's endorsement 6851LL, pertaining to uninsured motor vehicle coverage (Coverage U1), obliged State Farm to pay "damages for bodily injury and property damage an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle" (italics and boldface omitted) when the injury or damage was caused by accident arising out of such a vehicle's operation.

In pertinent part, the endorsement defined "uninsured motor vehicle" as a vehicle, "the ownership, maintenance or use of which" ei-

ther was "not insured or bonded for bodily injury liability and property damage liability at the time of the accident" or was so insured or bonded but either "the insuring company denies coverage or is or becomes insolvent" or the liability limits are less than required by the Indiana financial responsibility act. "Uninsured motor vehicle" was also defined as excluding a vehicle that was "insured under the liability coverage of the policy."

### IV. STATUTORY PROVISIONS

Statutes of three States are cited by plaintiff as bearing on this cause.

The first statutory provision is section 143.01(b) of the Illinois Insurance Code (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(b)), which reads:

> "(b) A provision in a policy of vehicle insurance excluding coverage for bodily injury to members of the family of the insured shall not be applicable when any person not in the household of the insured was driving the vehicle of the insured involved in the accident which is the subject of the claim or lawsuit."

The second statutory provision is section 9—3—3—1(b) of the Indiana Code (Ind. Code Ann. §9—3—3—1(b) (Burns 1987)), which is a "guest statute" and reads in pertinent part:

> "(b) The owner, operator, or person responsible for the operation of a motor vehicle is not liable for loss or damage arising from injuries to or the death of:
>
> (1) His parent; [or]
>
> * * *
>
> (3) His child ***;
>
> * * *
>
> resulting from the operation of the motor vehicle while the parent *** [or] child *** was being transported without payment therefor in or upon the motor vehicle, unless the injuries or death are caused by the wanton or willful misconduct of the operator, owner, or person responsible for the operation of the motor vehicle."

The third statutory provision is section 27—22—104(a) of the Arkansas Code of 1987 Annotated (Ark. Code Ann. §27—22—104(a) (Supp. 1989)), which reads:

> "(a) It shall be unlawful for any person to operate a motor vehicle within this state unless the person is covered by *** an insurance policy issued by an insurance company or surety company authorized to do business in this state."

## V. ANALYSIS

Plaintiff seeks to recover under the policy's liability coverage or, failing that, under the policy's uninsured motor vehicle coverage. The parties disagree regarding what State's law applies to construction of the policy provisions. In our view, a choice of law is immaterial to the question of liability coverage, even though crucial to the question of uninsured motor vehicle coverage.

### A. LIABILITY COVERAGE

■ Subparagraph 2(c) under the heading "When Coverage A Does Not Apply," in section I of the policy, clearly provided that liability coverage was excluded for bodily injury to any insured. The father was an insured. Therefore, by its very terms, the policy denied liability coverage for injury to the father, no matter whether any such liability existed, or under what State's law, or on whose part.

Neither party has suggested how this exclusion of liability coverage for injuries to the father would be *construed* differently under the law of one State or another. The pertinent policy language has the same clear meaning in any State and simply afforded no liability coverage for injury to the father. In fact, plaintiff agrees that the exclusion operates to her disadvantage unless it is *invalidated* by applicable State law.

Not only is the liability exclusion's meaning clear, but so is its validity under the law of any State arguably connected with this cause.

As plaintiff concedes, the exclusion was valid under Indiana law. See *Transamerica Insurance Co. v. Henry* (Ind. 1990), 563 N.E.2d 1265, 1268-69; *United Farm Bureau Mutual Insurance Co. v. Hanley* (1977), 172 Ind. App. 329, 360 N.E.2d 247.

No Illinois law invalidates it; the Illinois statute that plaintiff cites (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(b)) invalidates an exclusion for liability to an insured's *family members* in some circumstances, but not an exclusion for liability to an insured.

Arkansas law (Ark. Code Ann. §27—22—104 (Supp. 1989)) requires a driver to be covered by a liability insurance policy, but that provision did not become law until 1987 (see Act of March 27, 1987, No. 442, 1987 Ark. Acts 901; Act of March 31, 1987, No. 474, 1987 Ark. Acts 1032). Because nonemergency Arkansas statutes do not take effect until at least 90 days after final adjournment of the legislative session at which enacted, the law was not yet effective on the accident date. See Ark. Const. amend. 7; *Fulkerson v. Refunding Board* (1941), 201 Ark. 957, 962, 147 S.W.2d 980, 983; Henderson,

*The Creation of the Arkansas Code of 1987 Annotated,* 11 U. Ark. Little Rock L.J. 21, 26 & n.23 (1988-89).

Besides, the Arkansas compulsory-insurance statute "is not intended in any way to alter or affect the validity of any policy provisions, exclusions, exceptions, or limitations." (Ark. Code Ann. §27—22—101(a) (Supp. 1989).) In addition, the statute is "supplemental to and cumulative to" the Arkansas Motor Vehicle Safety Responsibility Act, which was in effect on the accident date. (Ark. Code Ann. §27—22—102 (Supp. 1989); Ark. Stat. Ann. §75—1401 *et seq.* (1979 & Supp. 1985) (now codified as Ark. Code Ann. §27—19—101 *et seq.* (1987 & Supp. 1989)).) Under the latter act's regime, policy exclusions of liability for injury to an insured or to a member of an insured's family or household have been enforced when passengers affected by the exclusions were injured. (See *Cook v. Wausau Underwriters Insurance Co.* (1989), 299 Ark. 520, 772 S.W.2d 614 (named insured driving; insured wife a passenger); *State Farm Mutual Automobile Insurance Co. v. Cartmel* (1971), 250 Ark. 77, 463 S.W.2d 648 (insured permittee driving; named insured a passenger).) The *Cook* case specifically considered the Arkansas compulsory-insurance law's terms as well. Thus, the exclusion of coverage for any liability of the son to the father is of a type generally permissible under the established Arkansas law of financial responsibility and compulsory insurance.

Therefore, no matter what State's law is considered to apply, the policy's liability coverage affords plaintiff no relief on her claim as it is presented here.

A separate question, of course, is whether, because the son was uninsured for liability to the father, plaintiff might recover on her claim for benefits under the policy's uninsured motor vehicle coverage. Illinois law would allow such recovery, but Indiana law does not. A choice of law thus becomes necessary.

### B. CHOICE OF LAW

Plaintiff favors applying the law of Illinois; State Farm favors Indiana's. Plaintiff contends that the son also would have Illinois law apply; the son took such a position in the circuit court but is not a party to this appeal.

■ To resolve the choice-of-law issue, State Farm cites *Jadczak v. Modern Service Insurance Co.* (1987), 151 Ill. App. 3d 589, 593, 503 N.E.2d 794, 797, and *Criterion Insurance Co. v. Reed* (1978), 66 Ill. App. 3d 925, 928, 383 N.E.2d 786, 787, for the rule that, among other factors, the court should look to the laws of the State in which the policy was issued or delivered. State Farm also cites *Hofeld v. Na-*

*tionwide Life Insurance Co.* (1975), 59 Ill. 2d 522, 528, 322 N.E.2d 454, 457-58, for the rule that other relevant choice-of-law factors include location of subject matter, place of contract delivery, domicile of insured or insurer, place of last act giving rise to a valid contract, place of performance, and any other place bearing a relationship to the general contract.

Here, the insured father was an Indiana resident. The automobile subject matter was a car licensed, registered, and garaged in Indiana. The contract of insurance embodied in the father's policy was usually "performed" in Indiana. State Farm was authorized to do business in Indiana, its agent maintained his office there, and the agent had authority to bind State Farm there through the signatures of himself and the father on the application. The father's application was processed by State Farm's regional office in Indiana, and that office issued the policy's declarations page. In what State Farm contends was the last act giving rise to a valid contract, the policy was signed by State Farm's agent in Indiana before delivering it to the father there, even though the policy also bore printed signatures of State Farm's secretary and president with the legend that they had been affixed at State Farm's headquarters in Bloomington, Illinois.

In *Jadczak*, by a policy's own terms, the last act to make it valid was the affixing of signatures by the company president and secretary in Minnesota—a fact on which the court based its conclusion that Minnesota law was generally applicable. (*Jadczak*, 151 Ill. App. 3d at 593, 503 N.E.2d at 797.) By contrast, the State Farm policy here contained no such terms as did the policy in *Jadczak*. Asserting that the last act to make the present policy valid was the agent's personal countersignature in Indiana, State Farm contends that under *Jadczak*'s rationale the law of Indiana is applicable. State Farm denies that choice of law should be governed by the mere recital that printed signatures of the president and secretary had been affixed in Illinois, reasoning that otherwise every State Farm policy nationwide would absurdly be governed by Illinois law, since all policies contain the same recital.

For her part, plaintiff contends that the law of the State with the most significant relationship to the parties and the transaction should control and that it is necessary to identify the gist of the action to determine which contacts are relevant. Plaintiff also contends that the court should consider the relevant policies of other interested States and the relative interests of those States in determination of the choice-of-law issue here. (See Restatement (Second) of Conflict of Laws §6(2)(c) (1971) (listing such factors as one of seven general

choice-of-law criteria).) From these principles, plaintiff argues that Illinois is the State of most significant contacts with all "parties"— counting the son. The son, however, though a party to the litigation, was not a party to the contract and thus is not a "party" in Second Restatement significant-contacts terms. See, *e.g.*, Restatement (Second) of Conflict of Laws §6, Comments *c, g*; §187, Comment *a*; §188, Comment *b* (1971).

Plaintiff points out that the father drove his car into Illinois; that from Chicago to Arkansas the car was continuously driven by the son, an Illinois resident; and that the father and son were to return to Chicago from their trip. Plaintiff adds that State Farm is a mutual company whose home office and principal place of business are in Illinois and whose policyholders have voting rights at annual meetings held only in Illinois. Citing the policy's statement that signatures of the president and secretary were affixed in Illinois, plaintiff also asserts that the policy was issued in Illinois.

Plaintiff argues that, even if Indiana's and Illinois' relative interests were similar, the public policy of Illinois as the forum State should be preferred if it conflicts with Indiana's statute and case law. (*Samack v. Travelers Insurance Co.* (1982), 111 Ill. App. 3d 61, 63, 443 N.E.2d 765, 767.) An Indiana statute immunizes a driver from negligence liability for the death of the driver's parent passenger. (Ind. Code Ann. §9—3—3—1(b) (Burns 1987).) As long as a driver is not a member of the insured's household, an Illinois statute nullifies any exclusion of insurance coverage for any negligence liability to injured members of an insured's family. (Ill. Rev. Stat. 1985, ch. 73, par. 755.01(b).) Plaintiff contends that these statutes signify a conflict in public policy between the two States. Plaintiff also points out that, under Indiana law, if a policy affords no liability coverage for injuries sustained in an occurrence, the same policy's uninsured motor vehicle coverage cannot be invoked to cover the injuries, but under Illinois law such coverage can be invoked.

Arguing that the purpose of vehicle insurance laws is to protect the insured as well as any permissive driver and to compensate accident victims, plaintiff contends that it would be fundamentally unfair to "apply" Indiana's "conflicting" statute so as to defeat the Illinois son's expectations of liability coverage for the father's injuries or death. Plaintiff also contends that State Farm's risk would not be changed significantly by applying Illinois law, because, since the policy's out-of-State coverage provisions themselves show that State Farm recognizes the probability of driving from State to State, State

Farm should not be surprised if Illinois law afforded the son coverage.

■ However, Illinois courts do not apply the reasonable-expectations doctrine to insurance contracts. (*American Country Insurance Co. v. Cash* (1988), 171 Ill. App. 3d 9, 11, 524 N.E.2d 1016, 1018.) Moreover, even if the doctrine were applied, the son was not a party to the contract; thus, plaintiff would be hard pressed to show how "[the son's] reasonable expectations were any part of it." *Insurance Co. of North America v. Adkisson* (1984), 121 Ill. App. 3d 224, 229, 459 N.E.2d 310, 313.

In addition, there is no conflict between Indiana's immunization of the son from liability to the father and Illinois' requirement of coverage for injury to the father's *family*. For that matter, neither is there any conflict between that Illinois requirement and the policy's own exclusion of liability coverage for injury to the father.

Too, as already observed, the son's lack of liability coverage for the father's injuries does not arise from "applying" any "conflicting" Indiana law but from the explicit terms of the policy itself, which would be read the same in Illinois as in Indiana.

Plaintiff has not persuasively distinguished *Hofeld, Jadczak,* and *Criterion* with regard either to their choice-of-law rules or to a choice of Indiana law under those rules.

■■ ■ It is true that some doctrinal variation among Illinois contract choice-of-law cases has been perceived, including a trend in some cases toward a Restatement-linked most-significant-contacts rule. (See *St. Paul Surplus Lines Insurance Co. v. Diversified Athletic Services* (N.D. Ill. 1989), 707 F. Supp. 1506, 1512-13. But see *Koclanakis v. Merrimack Mutual Fire Insurance Co.* (7th Cir. 1990), 899 F.2d 673, 675 (deferring flatly to law of insured risk's principal location in reliance on *Jadczak, Criterion,* and Second Restatement §193).) Still, unless some other State has a more significant relationship to the transaction and the contracting parties with respect to a particular issue, the Second Restatement envisions that an automobile liability policy will be governed by the law of the State where the car was intended to be principally located, even if the car is occasionally located elsewhere. "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state." (Restatement (Second) of Conflict of Laws §193, Comment *b*, at 611 (1971).) Here, the insured automobile was understood to be garaged and principally located in Indiana.

Meanwhile, most courts apply the traditional "place of contracting" rule; many others applying a modern significant-contacts rule still treat the place of contracting as the most significant contact; and we have found no choice-of-law cases involving an exclusion of liability to the named insured or a household member that apply the law of any State except the State of contracting or the State of accident. See Annot., 20 A.L.R.4th 738, 741, 746 (1983).

This action for declaratory judgment on a contract is not a tort case. For that reason, plaintiff's citations to cases on choice of tort law are inapposite.

On considering the facts of this cause in light of the *Hofeld-Jadczak-Criterion* rules, or even on the basis of a Second Restatement most-significant-contacts analysis, Indiana law clearly governs.

### C. UNINSURED MOTOR VEHICLE COVERAGE

If Illinois law governed construction of the policy's uninsured motor vehicle provisions, plaintiff would benefit from that coverage (see *Barnes v. Powell* (1971), 49 Ill. 2d 449, 275 N.E.2d 377; *Illinois Emasco Insurance Co. v. Doran* (1987), 160 Ill. App. 3d 927, 932, 513 N.E.2d 970, 972), but under current Indiana law, as construed by the Indiana Court of Appeals, the policy's uninsured motor vehicle provisions cannot benefit plaintiff.

The Indiana court has refused to apply a policy's uninsured motor vehicle provisions so as to treat as uninsured a person whose liability, because of a clause in the same policy, is excluded from liability coverage. *United Farm Bureau Mutual Insurance Co. v. Hanley* (1977), 172 Ind. App. 329, 360 N.E.2d 247.

In *Hanley*, the excluded person was a son of the "named insured." That son was the driver. The injured claimant was another son, who was a passenger. Each son was also included in the definition of "the insured." The exclusionary clause applied to liability for bodily injury to "the insured or to any person related to the insured *** and *** resident of the same household." (172 Ind. App. at 331 n.1, 333 n.2, 360 N.E.2d at 248 n.1, 249 n.2.) The insurance company sought a declaratory judgment (1) enforcing the exclusionary clause against the claimant and the named insured, and (2) denying that operation of the clause triggered the policy's uninsured-motorist coverage. (172 Ind. App. at 332, 360 N.E.2d at 248-49.) The trial court construed the policy terms to require that, because the driver was excluded from the policy's liability coverage, the claimant be given the benefit of the policy's uninsured-motorist coverage. 172 Ind. App. at 332, 360 N.E.2d at 249.

On appeal, the *Hanley* court stated that the sole issue was whether the exclusionary clause violated the State uninsured-motorist statute. The court held that it did not. In addition, the court interpreted the uninsured-motorist clause as not being triggered by the exclusionary clause.

Nothing in *Hanley* indicates that the policy terms significantly differed from those now before us. (See 172 Ind. App. at 330-31 n.1, 332, 339 n.9, 360 N.E.2d at 248 n.1, 249, 252 n.9.) Thus, under *Hanley*, the son's exclusion here from liability coverage could not make the policy's uninsured motor vehicle coverage available to plaintiff. Besides, the policy's provisions here go beyond those in *Hanley* and specifically define an uninsured vehicle to exclude a vehicle (such as the father's car here) that is insured under the same policy's liability coverage.

It is true as plaintiff says that, in addressing the effect of Florida uninsured-motorist law on an Illinois claim for a Florida accident, this court has emphasized that other States' statutes will not be given effect in Illinois when at odds with Illinois statutes or settled public policy. (*Samack v. Travelers Insurance Co.* (1982), 111 Ill. App. 3d 61, 63, 443 N.E.2d 765, 767.) However, in that case, both parties were Illinoisans, the policy in question was issued in Illinois, and the policy was generally to be governed by Illinois law. (*Samack*, 111 Ill. App. 3d at 64, 443 N.E.2d at 768.) Here, one party is an Indianan, the policy was issued in Indiana, and Indiana law generally governs it.

■ It is also true that, under the Second Restatement, when the parties to a contract have not effectively chosen a governing law, a court may apply the local law of whatever State is most significantly related in regard to a particular issue. (Restatement (Second) of Conflict of Laws §188 (1971).) Still, we find that Indiana has the more significant contacts with both the policy in general and the father's purchase of uninsured-motorist coverage in particular. When we couple this fact with established Illinois contract choice-of-law rules, we conclude that plaintiff cannot prevail.

For the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

CERDA, P.J., and RIZZI, J., concur.